498 P.2d 485

STATE of Arizona ex rel. Justin HERMAN, Arizona Highway Department, Appellant,

v.

TRANSAMERICA TITLE INSURANCE CO., an Arizona corporation, as Trustee under Trust # 24027; Glenn Strohm and Jane Doe Strohm, h/w; et al., Appellees.

No. 1 CA-CIV 1648.

Court of Appeals of Arizona,
Division 1,
Department A.

June 26, 1972.

Rehearing Denied Aug. 21, 1972.

Review Denied Oct. 3, 1972.

Gary K. Nelson, Atty. Gen., by James R. Redpath, Asst. Atty. Gen., Phoenix, for appellant.

Byrne, Green & Ellsworth, by David S. Ellsworth, Yuma, for appellees.

DONOFRIO, Acting Presiding Judge.

This appeal is from a judgment rendered in a condemnation action in accordance with a jury verdict of $124,600. Being an eminent domain proceeding, the sole issue determined in the trial court was the just compensation, i. e., fair market value, of the property condemned. Art. 2, § 17, Arizona Constitution, A.R.S. The State of Arizona, as plaintiff-appellant, (herein called the State) contests two evidentiary rulings made by the trial court during the course of the proceedings.

On October 29, 1968, in order to construct Interstate Highway 8, the State condemned an unimproved parcel of land consisting of 19.49 acres in the City of Yuma. Throughout the months before the case came to trial both parties hired real es-

tate appraisers for the express purpose of formulating an opinion as to the market value of the land taken by the State. The appellees (herein called the owners) hired an appraiser named Mel Anderson who inspected the subject premises and made an initial determination as to the fair market value. In the course of pretrial preparation the owners decided not to use the appraiser's estimate, but hired other experts who did testify at trial. The State sought discovery of Anderson's opinion of the property value, and at trial he was called to testify in the absence of the jury as to the conclusiveness of his opinion. The judge excluded any testimony from the witness, ruling that Anderson had not formulated a final opinion as to the value of the subject premises at the time he was told by the owners that his services were no longer required.

■ Having reviewed Mel Anderson's testimony in the transcript, we are reluctant to conclude that the trial court abused its discretion in rejecting the proffered testimony. In State v. Whitman, 91 Ariz. 120, 370 P.2d 273 (1962) our Supreme Court held that in a condemnation case the liberal discovery rules pertaining to attorney work product were fully applicable. In the instant case the trial judge excluded the witness from testifying without reference to protecting the work product of the attorney, but rather on the lack-of-foundation ground. It was the opinion of the court that the preparatory work necessary to render an expert opinion was not completed. The evidence before the Court supports this ruling. We therefore do not reach the issue of whether the condemnor may use an expert witness hired and paid by the condemnee who had formulated an opinion of the fair market value of the condemned property but was not to be used at trial by the condemnee.

The second issue raised is whether the trial court improperly excluded evidence of the sales price of the subject property approximately five years prior to the date of taking. The owners argued quite strenuously that the sale was out of probate and therefore not altogether voluntary. In the absence of the jury, prior to ruling, the court heard testimony from attorney Joe L. Green who handled the probate of the estate of Fama D. Townsend for the heirs, a portion of the estate being the subject premises. In essence, Mr. Green testified that there were creditors' claims, expenses of administration, and federal and estate taxes ranging around $70,000, all of which had to be paid. When counsel confronted the heirs with this situation, it was decided that in order to obtain the necessary cash the subject premises would have to be sold. Mr. Green further stated that the probate appraisers had valued the property at $97,500; that the owners had two or three offers; and that the land was subsequently sold to the highest bidder at $90,500. The terms of the sale were 10% down and the balance to be paid within a short period of time, either ninety days or six months.

Based upon the testimony of Mr. Green and a trial memorandum, the judge stated:

> "I am not convinced that the sale is a fair comparable and so both sides have made a full record and I rule it inadmissible and it will not be mentioned in the presence of the jury."

■ It is axiomatic that the sale of any subject property is admissible if it is "recent and voluntary and no changing conditions or marked fluctuations in valuation have occurred since that sale." Nichols on Eminent Domain, Vol. 4, Sec. 12–311(1), page 53, adopted in Parker v. State, 89 Ariz. 124, 359 P.2d 63 (1961).

■ The determination of comparability in Arizona is a matter of law and the trial judge may exercise wide discretion in determining which sales may be mentioned in the presence of the jury. Altschul v. Salt River Project Agricul. Imp. & P. Dist., 14 Ariz.App. 306, 483 P.2d 47 (1971). A careful review of the record compels us

to believe that the correct ruling would have been that the probate sale was a fair comparable, and admissible. While we feel this is a close case where the learned trial court may have abused its discretion, yet we feel the error is harmless and does not warrant reversal and a new trial. It is apparent that the jury did hear testimony from Mr. Everett Self on redirect examination that the appraisal of the property in 1963 for probate purposes was in the approximate range of $100,000. The fact that the jury did not learn that the subject premises actually sold for $90,500, or $9,500 less than the appraisal estimate in evidence, is not in our opinion prejudicial error. The reason for this holding is that the difference between the probate appraisal and the probate sale price is miniscule when we consider the fact that the variance between the State's appraisal of the total subject premises and the owners' appraisal at the time of trial was approximately $350,000. With reference to the parcel actually taken, the variance was approximately $125,000.

The State has ably briefed the question of whether probate sales are comparable per se. We recognize that the recent trend in other states is to hold that probate sales per se are not forced sales. State v. Langley, 422 S.W.2d 309 (Mo.1968); Redevelopment Agency Of The City Of Santa Monica v. Zwerman, 240 Cal.App. 2d 70, 49 Cal.Rptr. 443 (1966). However, just as private sales may be proven to be noncomparable, a probate sale may also be attacked for the same reason if the necessary quantum of evidence can be mustered by the party opposing the introduction of the terms of the probate sale.

The State has argued that the sale of the subject premises in 1963 was approved by a probate judge as required by A.R.S. § 14–598, and under the provisions of that statute sale out of probate could not be forced because of the protection the statute affords to heirs. The pertinent part of the statute reads as follows:

"A. A sale of real property at private sale shall not be confirmed by the court unless the sum offered is at least ninety per cent of the appraised value thereof, nor unless such real property has been appraised within one year of the time of the sale. If it has not been so appraised, or if the court is satisfied that the appraisement is too high or too low, appraisers shall be appointed, and they shall make an appraisement thereof in the same manner as an original appraisement, which may be done at any time before the sale or the confirmation.

"B. If it appears to the court that the sale was legally made and fairly conducted, that the sum bid was not disproportionate to the value of the property sold and that a greater sum cannot be obtained, or if a higher or better offer is made and accepted by the court, the court shall thereupon make an order confirming the sale, and directing conveyances to be executed, and the sale shall be deemed effective from that time."

Even though we fail to find a case directly on point, Division Two has analyzed the statute in question in Aboud v. Fenton, 12 Ariz.App. 44, 467 P.2d 756 (1970) and has held that, under the circumstances of the case, a sale confirmed pursuant to the requirements of § 14–598 could be set aside because it was advantageous to the estate to reopen the bidding and conduct a new sale. Judge Hathaway stated, and we emphasize, ". . . a judicial sale, fairly conducted, should not be lightly set aside, . . ." In the instant case, the trial judge felt that there was strong evidence of a forced sale situation and therefore concluded that the exercise of judicial discretion required him to withhold from the jury's consideration any mention of the probate sale. The Aboud case is authority for the proposition that a probate sale under § 14–598 can be set aside, and we feel we are not extending existing law when we state that a sale approved by a probate judge can be collaterally attacked

with clear and convincing evidence in a subsequent eminent domain proceeding for the purpose of proving that the probate sale is not a fair comparable.

It does not take great foresight to envision that the situation presented in this case, namely, recognition of the forced nature of a real estate sale approved in probate, can reoccur. Quite frankly, this situation is a by-product of a very low appraisal in probate by an expert who realizes that an estate is confronted with a "must sell" situation. The expert then dilutes his estimate of fair market value in order to aid the heirs in alienating property to obtain drastically needed liquidity to pay taxes and creditors.

A.R.S. § 14–598 was adopted from the California Probate Code § 784, and we take judicial notice of the fact that the California statute requires the appraisal to be made by an inheritance tax referee of the county of the Superior Court having jurisdiction. Cal.Rev. and Taxation Code § 13315 as amended 1970 (West 1970). Perhaps the Arizona Legislature should consider the adoption of a similar provision which hopefully would require a more impartial appraisal of fair market value for the judge to consider when authorizing a probate sale of real property.

It is to be noted that we are speaking only of the admissibility of probate sales as comparables in subsequent eminent domain proceedings involving the same property. We believe no hard-and-fast rule of law should be espoused regarding the admissibility of probate sales as comparables. In our opinion the trial judge must consider each case on its own merits and determine whether or not a probate sale is admissible as a comparable sale in a condemnation proceeding.

The judgment of the trial court is affirmed.

HAIRE, C. J., Division 1, and JACOBSON, J., concur.