851 P.2d 109

**TOWN OF PARADISE VALLEY, a municipal corporation, Plaintiff–Appellee,**

v.

**Donald J. LAUGHLIN, Defendant– Appellant.**

**No. 1 CA–CV 90–394.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 10, 1992.

Review Denied May 19, 1993.

Charles G. Ollinger, III, Paradise Valley, for plaintiff-appellee.

Ryley, Carlock & Applewhite, by N. Warner Lee, John C. Lemaster, Phoenix, for defendant-appellant.

## OPINION

GARBARINO, Judge.

Donald Laughlin ("Laughlin") appeals from a judgment in a condemnation suit awarding Laughlin damages for a taking of his property by the Town of Paradise Valley ("Town") of a permanent easement for roadway purposes. The easement taken by the Town covered a 2.39–acre parcel which was part of an approximately 16–acre parcel purchased by Laughlin in 1986. The following three issues are on appeal for our review:

(1) whether the trial court abused its discretion in refusing to allow Laughlin to testify as to the value of his property;

(2) whether the trial court abused its discretion in denying Laughlin's motion in limine to exclude evidence of the actual acquisition price of Laughlin's property;

(3) whether the trial court properly ruled that the Town could take a permanent easement rather than a fee simple absolute interest, and therefore whether it was error to deny Laughlin's motion in limine to exclude evidence that the Town was taking an easement.

For the reasons set forth herein, we reverse the judgment entered in the trial court and remand the case for a new trial.

## I. Should An Owner Always Be Allowed to Testify as to His Opinion of the Value of His Property?

Laughlin argues that the trial court abused its discretion in excluding his testimony as to his opinion of the value of the property at the time of its acquisition. Over objection by Laughlin's counsel, Laughlin testified that he had purchased the 16–acre parcel which included the 2.39–acre easement for $900,000. His opinion of the property's value at the time of purchase ($2,000,000) was based on information provided to him by his financial advisers and was ruled inadmissible. The court based its ruling on the fact that Laughlin did not personally investigate the value of his property but relied upon the opinions of his financial advisers.

The Arizona Supreme Court held in *Board of Regents v. Cannon*, 86 Ariz. 176, 178, 342 P.2d 207, 209 (1959), that an owner of property is always competent to testify as to the value of his property. Any explanation of the basis for his opinion of value goes to the weight of the evidence. *Id.* This court applied the rule that an owner may testify concerning the value of his property even if not qualified as an expert in *Santa Fe Pacific Railroad Company v. Cord*, 14 Ariz.App. 254, 482 P.2d 503, *cert. denied*, 404 U.S. 912, 92 S.Ct. 229, 30 L.Ed.2d 185 (1971).

■ The courts' language in *Cannon* and *Cord* is clear. An owner may *always* testify as to the value of his property. The court in *United Cal. Bank v. Prudential Ins. Co.*, 140 Ariz. 238, 681 P.2d 390 (App. 1983), explained that the reason that an owner of property is permitted to testify as to its value even if not an expert is because "[a]n owner of property has, by definition, knowledge of the components of value that are useful in ascertaining value, and an owner, no less than an 'expert,' can base his opinion of value on that knowledge." 140 Ariz. at 304, 681 P.2d at 456.

■ In this case, at the time Laughlin formulated his opinion, he had not yet purchased the property. He admitted having done no personal investigation as to value of the property before he purchased it. He relied upon the information given to him by his advisers and associates. He delegated the responsibility for investigating the value of the property to others. However, his testimony is still admissible. The fact that he relied upon others for the information necessary for him to formulate his opinion goes to the weight the jury should give his testimony. In *Cord*, even though the owner's testimony was based upon what others had told him, the court stated:

> This, however, does not destroy the admissibility of [the owner's] testimony. It is well established law that an owner of property is always competent to testify as to its value and that any explanation of how he arrived at value merely goes to the weight of his evidence.

14 Ariz.App. at 265, 482 P.2d at 514.

However, Laughlin was the individual who ultimately paid the purchase price. Based upon the advice of others, he formed an opinion and on the strength of that opinion, he paid over $900,000 for the property. It is safe to assume that his opinion was that the property was worth at least what he was paying for it or he would not have purchased it. We conclude that the trial court abused its discretion by not allowing him to testify as to his opinion of value.

■ Having determined that the court erred, we must next determine if it is reversible error. A trial court's ruling on the exclusion of evidence is not reversible error unless there is a clear abuse of discretion *and* the complaining party has been prejudiced. *See, Catchings v. City of Glendale*, 154 Ariz. 420, 426, 743 P.2d 400, 406 (App. 1987). Laughlin argues that he was prejudiced by the trial court's refusal to allow him to testify as to his opinion of the property's value because "the court in effect told the jury that Laughlin was incompetent to testify, and that he was an indifferent, affluent, absentee owner without personal knowledge about or interest in his property," and this influenced the jury's verdict with respect to fair market value and severance damages.

Prejudice will not be presumed but must be evident from the record. *United Cal. Bank v. Prudential Ins. Co.,* 140 Ariz. at 295, 681 P.2d at 447. In addition, an error is harmless if there is no reasonable probability the verdict might have been different. *Id.* We can only speculate what impact Laughlin's testimony would have had upon the jury had he been allowed to testify as to his opinion of the value of his property. We cannot find that his failure to testify, by itself, affected the jury's verdict. The fact that the trial court excluded the testimony because Laughlin relied on his advisers would not realistically have led the jury to believe he was "indifferent", "affluent," and an "absentee owner" so as to affect the jury's determination of market value or severance damages. The determination of value should not be affected by the owner's sentimental feelings towards the property nor upon whatever personality traits the jury might attribute to the owner. We therefore conclude that the trial court's failure to allow the owner to testify, where there was other evidence on the point from witnesses produced by Laughlin, would not by itself constitute reversible error.

## II. Should Evidence of the Acquisition Price be Admitted in Evidence?

Laughlin argues that the trial court abused its discretion by denying his motion in limine to exclude evidence of the price he paid for the property. He claims that the purchase price was irrelevant and therefore inadmissable. Ariz.R.Evid. 402. Even if the price were relevant, Laughlin contends that such evidence was unduly prejudicial because it permitted the jury to speculate about the profit he may realize. Ariz. R.Evid. 403.

Evidence of the price a condemnee paid for land is admissible in eminent domain proceedings if the sale was recent and voluntary and no change in conditions or marked fluctuations in values has occurred since the sale. *Parker v. State,* 89 Ariz. 124, 126, 359 P.2d 63, 65 (1961); *State ex rel. Herman v. Transamerica Title Ins. Co.,* 17 Ariz.App. 411, 412, 498 P.2d 485,

486 (1972). "The determination of comparability in Arizona is a matter of law and the trial judge may exercise wide discretion in determining which sales may be mentioned in the presence of the jury." *Id.* at 412, 498 P.2d at 486.

Laughlin argues that the trial court abused its discretion by not excluding testimony of the acquisition price because the purchase was not recent, not voluntary and changes in condition or marked fluctuations had occurred between the time of the purchase and the taking. The record does not support this argument. There were less than two and one-half years between the purchase and the taking. Although the Town's appraiser did not use the purchase price as a comparable, he testified that it was valid in appraising property such as Laughlin's to use sales two to three years previous to the date of value. Arizona courts have approved the use of acquisition prices as comparable sales when they were much older than two and one-half years. *See, e.g., Altschul v. Salt River Project Ag. Imp. & P. Dist.,* 14 Ariz.App. 306, 483 P.2d 47 (1971) (seven years).

Laughlin states in his brief that the seller testified that he sold the property under economic duress. However, the seller's testimony is not part of the record on appeal. What is included in the record is a statement by Laughlin's counsel in closing argument that the seller found himself in need of cash. This alone did not make the sale involuntary. *Herman,* 17 Ariz.App. at 412, 498 P.2d at 486.

Finally, Laughlin has presented no evidence that a substantial change in condition occurred between the purchase date and the date of the taking. The only evidence regarding this issue is the trial testimony of the Town's appraiser that the market had been stable for residential properties for two to three years prior to the taking.

We also reject Laughlin's argument that evidence of the purchase price, even if probative, was unduly prejudicial. Laughlin claims that, because of the admission of evidence of the purchase price, the jury likely confused the difference between

a distressed purchase price and the valuation asserted at trial by Laughlin as an attempt to gain a windfall profit. Laughlin argues that the prejudicial effect of the admission of the purchase price was exacerbated by the fact that he was unable to give his opinion of the value of the property at the time he purchased it. As discussed, the record shows that the purchase price may have been a fair comparable. This question is for the fact finder to decide after having been fully informed as to everything that bears on the question.

"The price paid for land when acquired is important evidence in determining its present value when such land is taken by eminent domain." *Parker v. State*, 89 Ariz. at 126, 359 P.2d at 64. Because the purchase price was much lower than what Laughlin contended the value of the property to be, the evidence was of course prejudicial to him. Laughlin has not proven that the evidence was "unfairly" prejudicial, as required by Ariz.R.Evid. 403. Therefore, the trial court did not abuse its discretion in denying Laughlin's motion in limine to exclude evidence of the acquisition price.

■ As a final note, the Town implies in its brief that Laughlin waived this issue because his counsel elicited the purchase price on direct examination. However, once the trial court ruled against Laughlin on his motion in limine, Laughlin did not waive the objection by eliciting the evidence himself. *State v. Hicks*, 133 Ariz. 64, 69, 649 P.2d 267, 272 (1982). Merely because Laughlin's counsel elicited the testimony concerning the acquisition price on direct examination in order to mitigate any adverse effect the testimony might have had on cross-examination, does not waive his objection.

### III. Should Evidence Regarding the Town's Taking of "Only" an Easement Interest be Admitted?

Laughlin argues that the court erred when it allowed the Town to present evidence to the jury that only an easement interest was being taken and again when it refused to allow Laughlin to present evidence that the reason the Town took only

an easement was to save money. He further argues that the Arizona legislature has specifically provided that when property is condemned for right of way purposes, the condemnor takes a fee simple absolute interest in the property.

The Town contends that it took an easement in perpetuity leaving to the property owner all incidents of ownership not inconsistent with the Town's surface easement.

The court ruled that the Town could take an easement interest rather than a fee simple absolute interest, and that because only an easement was being taken it could be argued to the jury that no severance damages to the remainder existed.

■ Ariz.Rev.Stat.Ann. ("A.R.S.") section 12–1113 provides as follows:

The interests, estates and rights in lands subject to be taken for public use, are:

1. A fee simple, when taken for public buildings or grounds or for permanent buildings, for use in connection with a right of way, or for an outlet for the flow or a place for the deposit of tailings or refuse from a mine or for irrigating ditches.

2. An easement when taken for any use other than those set forth in paragraph 1.

. . . .

The issue in this case becomes what estate was actually taken by the Town for which Laughlin must be compensated. The Arizona Supreme Court stated in *In re Forsstrom*, 44 Ariz. 472, 495–96, 38 P.2d 878, 888 (1934):

[W]e think, therefore, that, when any right or interest in land is taken by eminent domain for use in connection with a right of way, the word "fee simple" in section 1333 is intended to mean that, whatever the right or interest taken may be, it is taken in its entirety and as a perpetuity.... We think this language is amply broad to include the taking of a right of ingress and egress for a right of way, and, when it is taken for a street, the public gets a fee simple title to the right to the extent to which it is taken.

We must conclude from the *Forsstrom* case that whatever interest the Town took, it took as a "fee simple" interest in perpetuity. We must also conclude that the "taking" was to be used in connection with a "right of way" as set forth in A.R.S. section 12–1113. The Town contends that what it took was an easement in perpetuity leaving Laughlin with a servient fee simple ownership that was subject to the Town's surface easement for right of way purposes. Although one can argue that the condemning authority must only take that property which is required to satisfy the public need, in this case that is a fiction we cannot indulge just to avoid compensating the owner. For just compensation and due process purposes, we must look at what has in reality been taken from the property owner. Certainly Laughlin could make no physical use of whatever was left him by the city. There was no "joint" use of the property. It would be sheer speculation to say he could use it in the event he elected to develop the property in conjunction with a future zoning application to comply with a Town Cluster Plan or Hillside Development ordinance, as suggested by the Town. This "phantom" servient estate would appear to have no monetary value to a third party. We can only conclude that after the "taking," Laughlin was left with little or nothing of consequence or value.

For compensation purposes we conclude that the Town took a "fee simple" interest for right of way purposes. The Arizona Constitution mandates that just compensation be paid an owner whose property has been taken by a governmental entity for public purposes. Ariz. Const., art. 2, § 17, A.R.S. In *State ex rel. Miller v. Superior Court*, 168 Ariz. 147, 812 P.2d 620 (1991), our supreme court stated, " 'Just compensation' implies the full monetary equivalent of the loss sustained by the owner whose land the government has taken or damaged."

■ Upon review, one can readily see the injustice of applying the Town's theory of the case. To embrace the theory that Laughlin may at some future time use the servient estate left to him after the "tak-ing" in conjunction with a zoning application is remote and speculative. By the same token, to deny him "just compensation" on the same basis violates the Arizona Constitution. "Just compensation" implies the full monetary equivalent of the loss sustained by the owner whose land the government has taken or damaged. *State ex rel. Miller v. Filler*, 168 Ariz. 147, 149, 812 P.2d 620, 622 (1991).

We find the trial court erred by allowing the Town to present evidence that the damages for Laughlin should be less because only an easement was taken and that Laughlin could still utilize the 2.39 acres in complying with zoning requirements.

Based on the foregoing analysis we also conclude that the trial judge erred when he refused to allow Laughlin to use portions of the testimony of John Baudeck, the Paradise Valley Town Manager, to be read into evidence. The excluded testimony of the Town Manager related to the difference in compensation for a "fee simple" taking versus an "easement" taking. Even though that testimony was given in a companion case, it was relevant to the facts of this case and the court erred in excluding it. Absent other objection, and we find none raised, the trial court erred by not allowing Laughlin to use that testimony.

■ The Town argues that Laughlin waived the issue by not timely objecting to the court's reference to a "permanent easement for roadway purposes" in its order of immediate possession. Laughlin contends that it would have been procedurally incorrect for him to have objected at that hearing. A.R.S. section 12–1116 provides that at a hearing on immediate possession the only issue is that of necessity and probable damages. We agree. An objection at that time relative to the interest taken would have been immaterial to the subject at issue.

Laughlin's motion in limine was sufficient to raise the easement issue. As soon as the court ruled on the motion in limine, Laughlin was entitled to accept the ruling as the law of the case and to argue it without fear of waiving his objection. We

again look to *Hicks,* 133 Ariz. 64, 649 P.2d 267 (1989), for authority.

### *Conclusion*

We find the trial court erred by not allowing the property owner to testify as to his opinion of the value of his property. Standing alone, we do not believe that this error would warrant a new trial. However, we also find that the trial court erred when it allowed the Town to argue that because it was only "taking" an easement, severance damages were either less or non-existent. We find additional error where the court precluded Laughlin from using the testimony of the Town Manager. Based upon the cumulative effect of the court's error, we do not believe the property owner received a fair trial.

It is ordered vacating the jury's verdict and the judgment of the court and remanding the case for a new trial.

JACOBSON, P.J., and KLEINSCHMIDT, J., concur.