NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

PAM CASE BOBROW, *Petitioner/Appellee/Cross-Claimant*,

*v.*

KENNETH S. BOBROW, *Respondent/Appellant/Cross-Claimant*.[1]

No. 1 CA-CV 14-0806 FC
No. 1 CA-CV 15-0114 FC
(Consolidated)
FILED 3-9-2017

Appeal from the Superior Court in Maricopa County
No. FN2013-004259
The Honorable Christopher T. Whitten, Judge

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

COUNSEL

Dickinson Wright PLLC, Phoenix
By Steven D. Wolfson, Anne L. Tiffen
*Counsel for Petitioner/Appellee/Cross-Claimant*

---

[1]      The parties' titles have been modified to simplify the caption.

Fennemore Craig, P.C., Phoenix
By Alexander R. Arpad
*Co-Counsel for Respondent/Appellant/Cross-Claimant*

Fromm Smith & Gadow, PC, Phoenix
By Stephen R. Smith
*Co-Counsel for Respondent/Appellant/Cross-Claimant*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Jon W. Thompson joined.

---

**M c M U R D I E**, Judge:

**¶1**　　　　In these consolidated appeals, Kenneth S. Bobrow ("Husband") and Pam Case Bobrow ("Wife") appeal from a decree of dissolution allocating sale proceeds from real property in Snowmass, Colorado ("Snowmass Property"). In a concurrently filed opinion, we address other issues raised by the parties.

**¶2**　　　　For the reasons stated below, we affirm the amount of the judgment in favor of Wife for the Snowmass Property, but reverse the provisions ordering Husband to make a partial lump-sum payment and to pay interest from the date the petition for dissolution was served. On remand, Husband shall be ordered to either pay the entire balance for the Snowmass Property, or make equal monthly payments of the balance due with interest accruing from the date the decree was entered. We affirm the denial of Wife's request for security on the promissory note without prejudice, if a later request is warranted. We also affirm the superior court's order that Husband reimburse Wife for $129,341.10 in "ordinary and necessary" living expenses as required under the Agreement.

### FACTS AND PROCEDURAL BACKGROUND

**¶3**　　　　When the parties married in 2002, they entered into a premarital agreement ("Agreement"). Although the parties stipulated in the superior court the Agreement was valid and enforceable, they disputed how that Agreement should be applied.

¶4            At the time of the marriage, the parties resided in the Snowmass Property. Pursuant to the Agreement, the Snowmass Property was Husband's separate property. The Agreement provided, in relevant part, that if either party filed a petition for dissolution:

> Within twenty-four (24) hours of the entry of the Decree, Husband shall, at Husband's sole option, (i) pay to Wife 50% of the equity in the [Snowmass Property] or (ii) Husband shall provide Wife a 10 year promissory note providing for the monthly payment of principal and interest at 10% per annum to Wife of 50% of the equity in the Snowmass Property, or (iii) Husband shall list the Snowmass Property for sale for a period of two (2) years and, if the property has not sold within that time period, then at the conclusion of two (2) years, Husband shall pay to Wife 50% of the equity in the Snowmass Property with 10% interest per annum from the entry of the Decree. Equity is defined as appraised value minus $1.2 million, for purposes of this subsection only.

Husband sold the Snowmass Property in 2007, six years before Wife filed a petition for dissolution. The superior court determined that Husband would pay Wife fifty percent of the $2,348,145.89 net proceeds from the sale. The court ordered Husband to elect one of two options: (1) make an initial cash payment of $370,658.90 within thirty days and execute a promissory note for the balance due plus ten percent interest per annum with equal monthly payments over ten years, or (2) pay the full amount due in cash within thirty days. Husband was ordered to notify Wife of his election in writing within seven days from entry of the decree.

¶5            After other post–decree motions were decided, Wife filed a motion for clarification, arguing Husband failed to timely notify her of his payment election. Wife asked the superior court to order Husband to pay the amount due in full. Husband argued he had timely notified Wife of his intent in a settlement letter. The court ruled the letter did not sufficiently notify Wife, but excused the untimely election because the decree did not impose a consequence for such failure and the vague notification terms in the decree led to the confusion. Therefore, the court permitted Husband to elect the payment plan option.

¶6            The court also found Wife was entitled to reimbursement for $129,341.10 in "ordinary and necessary" living expenses she paid throughout the marriage, but rejected as extraordinary several of the

expenses Wife claimed. Both parties filed multiple amended notices of appeal from the decree and the denial of post–decree motions. The appeals were consolidated, and this court has jurisdiction pursuant to A.R.S. § 12-2101(A)(1), (5)(a) (2016).[2]

## DISCUSSION

### I.      Snowmass Property.

¶7          The Snowmass Property was Husband's separate property pursuant to the Agreement. The Agreement provided that "any change in the nature, value, or other characteristics of any property held prior to marriage, shall be free of community property right or interest and any claim, contention, or assertion of such right or interest." The Agreement likewise provided that a party was entitled to any "profits" from his or her separate property without a community interest accruing to the other party. As described above, despite the separate property character of the Snowmass Property, the Agreement provided that if either party filed for dissolution, Husband would pay Wife fifty percent of the "equity" in the Snowmass Property, according to three sets of time and payment terms available at Husband's option. The Agreement did not specify, however, a payment option that would apply if Husband sold the Snowmass Property prior to dissolution. In light of this unanticipated circumstance, the superior court concluded exact application of the payment provisions was impossible and reformation "to some extent" was needed "[t]o best effect the intent of the parties in applying Section XII(e)[.]"

### A.      Reformation.

¶8          Husband argues the superior court erred in reforming the Agreement to include the award of one-half the net-sale proceeds instead of the "equity in the Snowmass Property" as defined in the Agreement. Husband argues his sale of the Snowmass Property did not render performance impossible, because the Agreement did not convey to Wife an interest in the property, but gave her only a right to a payment, upon dissolution.

¶9          The principal purpose of the Agreement's treatment of the Snowmass Property was not impossible or frustrated: even though Husband had sold the property, he remained able to pay Wife a portion of

---

[2]          Absent material revision after the relevant date, we cite a statute's current version.

the "equity" (as defined in the Agreement) at some point and in some manner. *See Marshick v. Marshick*, 25 Ariz. App. 588, 591 (1976) ("The doctrine of impossibility does not operate unless the contractual duties would be impossible for [a]nyone to perform."). However, the sale of the Snowmass Property rendered the specific payment terms in the Agreement inapplicable.

**¶10**          "Reformation is the remedy designed to correct a written instrument which fails to express the terms agreed upon by the parties; it is not intended to enforce the terms of an agreement the parties never made." *Isaak v. Mass. Indem. Life Ins. Co.*, 127 Ariz. 581, 584 (1981) (citation omitted). The parties' Agreement did not contemplate what to do if Husband sold the Snowmass Property prior to a petition for dissolution being filed. Nonetheless, the superior court was obligated to give effect to the parties' intent that Wife would receive some payment pursuant to the Agreement. In light of the sale of the Snowmass Property, the court could not apply the Agreement as written. Neither party claimed the sale rendered the Agreement unenforceable. Thus, the court had to determine how best to interpret the Agreement consistent with the parties' original intent.

**¶11**          We review the superior court's interpretation of the Agreement *de novo*. *Rand v. Porsche Fin. Servs.*, 216 Ariz. 424, 434, ¶ 37 (App. 2007). "The purpose of contract interpretation is to determine the parties' intent and enforce that intent." *Grosvenor Holdings, L.C., v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009) (citation omitted). "[W]hether a contract is reasonably susceptible to more than one interpretation is a question of law, which we review de novo." *Id*. The parties' intent is a question of fact for the fact finder, *Chopin v. Chopin*, 224 Ariz. 425, 428, ¶ 7 (App. 2010) (citation omitted), and we will not reverse the fact finder's determination unless it is clearly erroneous. *Valento v. Valento*, 225 Ariz. 477, 481, ¶ 11 (App. 2010).

### B.      "Equity" in Snowmass Property.

**¶12**          Pursuant to the Agreement, Husband was to pay Wife fifty percent of the "equity" in the residence, "defined as appraised value minus $1.2 million, for purposes of this subsection only." The parties disputed whether the court should have used the 2007 net proceeds or a 2014 appraisal to determine the amount of Wife's payment. The superior court concluded Wife was entitled to one-half the 2007 net-sale proceeds.

**¶13**       Husband argues that because Wife's interest in the Snowmass Property did not arise until the decree was entered and the Agreement defined the amount of the payment as the appraised value, the payment amount should have been based on its appraised value in 2014. Husband testified the value of the property at the time of trial was between $2.3 and $2.75 million. Therefore, he contends, Wife is due $775,000 (half of $2.75 million less $1.2 million).

**¶14**       Wife contends the following subsection of the Agreement supports using the net-sale proceeds:

> Husband shall list the Snowmass Property for sale for a period of two (2) years and, if the property has not sold within that time period, then at the conclusion of two (2) years, Husband shall pay to Wife 50% of the equity in the Snowmass Property with 10% interest per annum from entry of the Decree.

Wife argues the provision applies because it relates to the sale of the Snowmass Property. However, the cited option only states how to calculate Wife's payment if the property did not sell; it does not state what the payment would be if the property sold. None of the options in the Agreement contemplated a sale prior to the decree; therefore, none of the options are applicable as written.

**¶15**       Neither party disputes the purpose of the Agreement was to provide Wife with one-half of the equity in the Snowmass Property when the parties divorced in exchange for Wife relinquishing rights to community property and spousal maintenance. Because the Agreement anticipated Husband would still own the Snowmass Property upon dissolution, it based the amount of the payment due on an appraised value.

**¶16**       Wife asserts the court properly relied on the net-sale proceeds, because Husband did not present evidence of a 2014 appraised value. Husband testified to his opinion regarding the value of the Snowmass Property in 2014, but did not present an appraisal. While a property owner can testify to the value of owned property, Husband was not the owner of the Snowmass Property at the time he testified and had not been for many years. *See Town of Paradise Valley v. Laughlin*, 174 Ariz. 484, 486 (App. 1992). Moreover, the Agreement refers to "appraised" value, not estimated value. Neither party presented any appraisal evidence in order to determine Wife's share based on an appraised value

in 2014. In light of Husband's failure to provide evidence of a 2014 appraisal, the court did not abuse its discretion in choosing to define "equity" by the 2007 net-sale proceeds.

¶17 Husband contends the appropriate remedy for the absence of evidence of a 2014 appraisal would be to remand to allow additional evidence. Husband had an opportunity to present such evidence at trial and failed to do so.

¶18 The use of the net-sale proceeds does reflect the intent of the parties to grant Wife a share of the "equity" in the Snowmass Property. Therefore, we affirm the superior court's reliance on the 2007 net-sale proceeds to determine Wife's interest in the Snowmass Property.

### C. Payment Options.

¶19 As noted above, the Agreement gave Husband the option of electing one of two payment options to pay Wife her interest in the Snowmass Property: (1) full cash payment of Wife's share upon entry of a decree; or (2) payment over ten years at ten percent interest. Husband contends the superior court's decree failed to give effect to either option by requiring him to make a partial lump-sum payment of $370,658.90 due within 30 days. Wife asserts the order for an immediate partial payment was within the superior court's equitable powers to modify premarital agreements. *See Gerow v. Covill*, 192 Ariz. 9, 13, ¶ 16 (App. 1998) (superior court sits in equity). We disagree with Wife's assertion as the court's interpretation of an agreement of the parties must be consistent with the parties' intent. *See Grosvenor Holdings*, 222 Ariz. at 593, ¶ 9.

¶20 The Agreement expressly granted Husband the choice of payment method in his sole discretion. As the Agreement provided, Husband could pay the entire amount at once, or he could pay equal installments over ten years plus interest. Although the sale may have left Husband with the ability to pay the entire amount in 2007, he was not required to pay Wife at that time, because Wife had no interest in the Snowmass Property or its sale proceeds until the decree of dissolution was entered.

¶21 The Agreement did not include any reference to partial lump-sum payments, nor does there seem to be a correlation between the lump-sum payment amount and the 2007 sale proceeds. The superior court's lump-sum amount, therefore, has no basis in the Agreement and was contrary to the parties' intent to give Husband the right to choose a payment option.

¶22        Wife contends it would be inequitable to her to allow Husband to choose the payment option, because she will have to wait a total of 17 years to receive full payment, meaning the seven years between the sale of the property and the dissolution, and ten years after the dissolution. However, under the terms of the Agreement, Wife granted Husband the option of paying her over ten years from the entry of the decree. Her claim that she has a right to payment prior to the decree is inconsistent with the Agreement. *See infra* ¶ 19. In fact, the Agreement provides that Wife did not have an interest in Snowmass Property until a decree had been entered. The Agreement states that Wife's interest was in lieu of any spousal support she may have been entitled to, and as such, she was not entitled to any payment of the sale proceeds until June 2014.

¶23        Wife further argues the superior court abused its discretion by failing to find Husband forfeited the right to make payments over time when he did not elect a payment option within the time provided in the decree. Wife contends the failure to enforce this deadline rendered the provisions allowing Husband to elect a payment option meaningless. Wife's argument that Husband forfeited the installment-payment option is akin to a request for sanctions. Superior courts have wide discretion in deciding whether to impose sanctions, and we will not disturb that decision absent an abuse of discretion. *See generally Berry v. 352 E. Virginia, L.L.C.*, 228 Ariz. 9, 15, ¶ 31 (App. 2011) (discussing sanctions pursuant to Ariz. R. Civ. P. 68).

¶24        As the superior court noted, neither the Agreement nor the court's order imposing payment obligations specified any consequence should Husband fail to elect a payment option in the time provided. Additionally, the court found Husband's purported election inadequate, but because the decree and the Agreement failed to specify how Husband was to provide adequate notice of his election, the court declined to impose the sanction Wife requested. The court did not abuse its discretion in so ordering.

### D.    Pre-judgment Interest.

¶25        The superior court ordered Husband to pay interest on the Snowmass Property payment from the date the petition for dissolution was filed: October 7, 2013. Husband argues Wife was not entitled to any payment until the decree was entered on June 23, 2014; therefore, interest should not commence before that date. Wife contends the superior court abused its discretion by failing to award her pre-judgment interest from the 2007 sale date.

¶26 Wife's claim that she is entitled to interest from the 2007 sale is based on the premise she was entitled to one-half of the sale proceeds on that date. *See Malecky v. Malecky*, 148 Ariz. 121, 122 (App. 1985) ("[W]here a party retains and makes use of money belonging to another, equity requires that interest be paid on the money so retained and used. The fact that the parties here were married is of no consequence."). As noted above, Wife had no interest in the Snowmass Property for as long as the marriage lasted. Although the amount of sale proceeds was a liquidated amount as of 2007, Wife did not have an interest in the Snowmass Property proceeds until a decree of dissolution was entered. The Agreement stated that *if* a petition is filed, Husband shall make several payments to Wife, including a payment related to the Snowmass Property. However, prior to a dissolution petition being filed, the parties waived any interest in each other's assets or profits. Because Wife waived any interest in the Snowmass Property during the marriage, she was not entitled to any sale proceeds in 2007, and the court properly declined to award interest from 2007.

¶27 Wife argues denying interest from 2007 violated the public policy of preserving marriage and improperly considered Wife at fault for not filing a petition earlier. *See Fernandez v. Romo*, 132 Ariz. 447, 449 (1982) (recognizing public policy of preserving marriage). Wife had no interest in the Snowmass Property until a decree was entered. Had the parties not divorced, Wife would not be entitled to any payment pursuant to the Agreement. Thus, the decree did not violate the public policy of preserving marriage.

¶28 The payment options in the Agreement obligated Husband to pay interest from entry of the decree. This is consistent with the fact that Wife had no interest in the Snowmass Property during the marriage. Imposition of interest from the date the petition was filed would be inconsistent with the parties' intent as expressed in the Agreement. Thus, upon remand the court shall order that Husband pay Wife interest from the date of the entry of the decree.

### E.     Security for the Promissory Note.

¶29 Following entry of the decree, Wife asked the superior court to impose a lien to secure the Snowmass promissory note. In support of this request, Wife alleged Husband's business entities had previously defaulted on loan agreements with Wife and that Husband disputed some of his obligations under the Agreement. The court denied the motion, finding no good cause.

¶30　　　　The superior court has discretion to impose a lien on the separate property of one spouse to secure payment to the other party. *See* A.R.S. § 25-318(E); *In re Marriage of Crawford,* 180 Ariz. 324, 327–28 (App. 1994). The superior court's discretionary ruling is supported by the fact that, at the time of Wife's request, Husband had not failed to satisfy any undisputed liabilities or court-ordered obligations. Husband's conduct after the court denied Wife's request is not relevant to determining whether the court abused its discretion in ruling on the request. We affirm the order denying Wife's request for security without prejudice, allowing Wife to renew the request if warranted.

## II.　　Ordinary and Necessary Living Expenses.

¶31　　　　Pursuant to the Agreement, Husband was obligated to pay the parties' "ordinary and necessary living expenses" during the marriage. Wife sought reimbursement for approximately $184,000 she incurred in what she claimed were "ordinary and necessary" expenses throughout the marriage, and for which Husband had not reimbursed her. Because the Agreement did not define "ordinary and necessary living expenses," the superior court concluded it meant "those expenses which, historically, were either voluntarily paid by Husband or which were incurred by Wife, with Husband's knowledge, and without his voicing disagreement." After reviewing the evidence, the court awarded Wife $129,341.10 in reimbursement.

¶32　　　　Husband claims the court erred in concluding Wife's expenses were "ordinary and necessary," and that the interpretation as to the meaning of "ordinary and necessary" is objective and should not be subjected to the parties' lavish lifestyle. We will not reverse the superior court's determination of the parties' intent absent clear error. *Chopin*, 224 Ariz. at 428, ¶ 7.

¶33　　　　In determining the parties' intent, the court may consider the language in the Agreement as well as the surrounding circumstances, the parties' prior understanding, and subsequent conduct. *Darner Motor Sales v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 393 (1984). The court properly considered the expenses historically paid by Husband or incurred by Wife with Husband's knowledge. When asked to define "ordinary and necessary" expenses, Husband stated it meant "reasonable"

expenses that were "not unusual."[3] The court's interpretation was consistent with Husband's own understanding of the term. We find no abuse of discretion or clear error.

¶34     Husband contends this judgment should be offset by his $50,000 annual payments to Wife. The annual $50,000 payment is a separate obligation mandated by the Agreement. We affirm the judgment reimbursing Wife for ordinary and necessary living expenses.

## CONCLUSION

¶35     We affirm the amount of the Snowmass Property award in favor of Wife, but reverse the provisions ordering Husband to make an immediate partial lump-sum payment and to pay interest from the date the petition for dissolution was served. We affirm the denial of Wife's request for security on the promissory note, without prejudice to a later request if warranted. We affirm the superior court's ruling regarding ordinary and necessary expenses. We remand the case for further proceedings consistent with this decision. Lastly, because Wife has prevailed in larger part, we will award Wife her costs upon her compliance with Rule 21, Arizona Rules of Civil Appellate Procedure.



AMY M. WOOD • Clerk of the Court
FILED:   AA

---

[3]     Husband does not argue that pursuant to A.R.S. § 25-205 (statute of limitation applicable to an action asserting a claim for relief under a premarital agreement), Wife was precluded from seeking reimbursement regarding expenses from the past ten years.