217 P.2d 918

**TOWN OF WILLIAMS v. PERRIN et al.**

No. 5101.

Supreme Court of Arizona.

April 27, 1950.

Urban R. Miller, of Williams, for appellant.

H. K. Mangum and T. M. Flick, of Flagstaff, for appellees.

DE CONCINI, Justice.

Appellant, Town of Williams, brought an action in eminent domain against appellees to condemn certain of the latter's property needed in connection with a program of water works improvement. Appellant sought to condemn a right-of-way for a pipe line, being 25 feet in width by 5452 feet in length and covering an area of approximately 2.86 acres. Appellant further sought to condemn 40,019.21 cubic yards of clay, sand and gravel from a 10 acre tract to be used in constructing a reservoir. The excavation resulting from the taking thereof covered only an area of 6.81 acres, however, the tract of land owned by appellees and from which the material was taken amounted to at least 40 acres. In connection with the taking of the materials, appellant further sought to condemn a temporary roadway over the remainder of that 40 acre tract, amounting to .34 acre in area, leading from the "borrow pit" to the reservoir site. The cause was tried to a jury which awarded appellees $150.00 for the right-of-way, $4,001.92 for the removal of the construction materials and $250.00 for the temporary roadway, $100.00 of which defendant remitted by order of the trial court.

Appellant in its briefs makes eleven assignments of error and seven propositions of law. We will concern ourselves only with those necessary to dispose of this appeal.

Our first consideration is directed to a determination of the correctness of the award of $150.00 as compensation for the taking of the right-of-way over appellees' land and the award of $150.00 compensation for temporary use of appellees' land as a roadway from the "borrow pit" to the reservoir site. Appellees introduced no evidence as to the amount of compensation to which they were entitled as a result of the taking of these two items.

■ It is a fundamental and well-established rule of law that the burden of proof as to the amount of damages in condemnation proceedings is upon the property owner. The only evidence as to the amount of damages appellees suffered from the taking of the right-of-way was introduced by the appellant. Under this proof, the damages for the taking of the right-of-way amounted to $114.20. Consequently, the award must be reduced to that amount. Since there is no evidence as to the amount of damages which the taking of the right-of-way caused to the remainder, we cannot assume that any such damages exist.

The same situation exists as to proof of damages for the temporary use of appellees' land as a roadway from the "borrow pit" to the reservoir. Under the only evidence introduced, that of appellant, the award must be reduced to the sum of $6.80.

■ A further question raised by the appellant in connection with the above items, is, did the trial court err in refusing to allow appellees' tenant to testify as to what benefit the water line would be to him? If such refusal were error, it is not prejudicial because the appellant has prevailed in this appeal upon the issue of measure of damages for the taking of the right-of-way. The refusal to allow the testimony was not error, though, because there was no evidence that the appellees would have the right to make use of the water therefrom. Moreover, since no evidence was introduced as to any damages which the pipe line had caused to the rest of appellees' land, the issue of benefit to the remaining land was immaterial, since under section 27-915 (3), A.C.A.1939, where only a part of a tract is taken for a public use, the benefits accruing to the residue may only be set off against the damages thereto and not as against the value of the part taken. Under the circumstances, the trial court was therefore correct in excluding evidence of benefit to the remaining land of appellees.

■ The appellant also claims that the amount awarded to appellees for the taking of earth from their land for use in the construction of the reservoir, in the sum of $4,001.92, was excessive. Its line of reasoning is that the area of the excavation resulting from the removal of the materials therefrom amounted to 6.81 acres; that by appellees' witnesses the greatest valuation given to the land was $400.00 per acre, therefor the largest sum to which appellees are entitled would be $2,724.00.

■ This proposition as applied to these facts is completely without merit. Appellant's authorities cited in support thereof do not uphold its position. Furthermore, a municipality may condemn only what is actually needed for the public use. 14 A.L.R.Ann. 1350; 68 A.L.R.Ann. 837. Appellant did not seek to condemn the fee but only the materials taken from a ten acre tract. It is only consonant with common sense that an excavation of 40,000 cubic yards of earth from 6.81 acres in a square ten acre tract would leave much to be desired in the value of the remaining 3.19 acres, to say nothing of what other damages might have resulted to the value of the remaining 30 acres of the original 40 acre tract. If we were to adopt appellant's contention limiting damages solely to the value of the fee actually disturbed by the excavation, it would result in undue hardship on appellees because the question of damages to the remaining land not touched by the taking would not be considered nor submitted to the jury as provided for in section 27-915, A.C.A.1939.

The appellant further argues that the amount allowed as damages for the taking of the materials is erroneous because it is apparent that the jury arrived at this figure on the basis of testimony as to the cubic yard value of the earthen materials taken. The record reveals that this is the situation here. The jury awarded appellees the sum of $4,001.92 on the basis of the removal of 40,019.21 cubic yards of earth. One of appellees' witnesses testified that the market value of the material taken was 10¢ per cubic yard, another said 15¢ per cubic yard. Thus it appears that the jury's measure of damages was based on a 10¢ per cubic yard valuation.

Furthermore because of the manner in which the issue of damages was presented to and determined by the jury, and in view of the instructions submitted by both parties, the verdict in the sum of $4,001.92 will be permitted to stand. Reinhardt v. Doyle, 39 Ariz. 318, 6 P.2d 428. The appellant itself requested an instruction by which the jury was directed to measure the damages to appellees according to the market value of the earthen materials removed. Appellant cannot now complain of the fact that the jury followed instructions asked by it and given by the court. Schell v. F. E. Ransom Coal & Grain Co., Mo.App., 79 S.W.2d 543. A party may not complain of instructions given at his request and is bound by the theory of his own instructions. Wilkenson v. Phoenix R. Co. of Arizona, 28 Ariz. 216, 236 P. 704.

Counsel for appellant devotes nearly one-half of its briefs and oral argument to a criticism of the rule of evidence laid down in the case of Viliborghi v. Prescott School District No. 1 and, the case of City of Los Angeles v. Deacon, hereinafter cited. We agree with counsel and feel we should not follow that rule in the future. However, appellant has not been prejudiced herein by the application of the rule because it is prevailing herein on its 1st and 3rd causes of action which covers the value of the right-of-way for the pipe line and the value of the temporary roadway to the "borrow pit," for the reason that appellee did not introduce any evidence on those two items contrary to appellant's proof. While appellant is not prevailing on its 2nd cause of action covering the value of the earthern materials taken it makes no difference because the application of the rule was not invoked in establishing the value of earthern materials.

The rule referred to excludes testimony by an expert on direct and redirect examination as to facts and considerations upon which his opinion as to the market value of land of property sought to be condemned is based. The rule is set out in the case of Viliborghi v. Prescott School District No. 1, 55 Ariz. 230, 100 P.2d 178, 179, in the following words: "The substance of this is that the value must be shown by the opinion of expert witnesses. After a witness has qualified properly as an expert, he should state what in his

judgment is the market value of the property without showing upon what factors that opinion is based. On cross-examination, however, he may be asked as to all the different factors which he took into consideration in reaching his ultimate conclusion. This cross-examination, however, is allowed solely for the purpose of testing the value of the witness' testimony, and is not, in itself, evidence of the value of the property. * * *"

The reason for the adoption of the rule is also set out in the Viliborghi case, supra, as follows: "* * * Our statute on condemnation proceedings is taken from California, and the procedure which the courts of that state have followed in such cases is very persuasive. In City of Los Angeles v. Deacon, 119 Cal.App. 491, 7 P.2d 378, (quoting from the California case) * * *". (Parenthesis supplied.)

While it is a general rule that the interpretation placed on a statute by a state from which our own statute was adopted is persuasive, we are by no means bound to follow it. There is, however, no reason either in law or in fact to apply this principle to an adoption by us of procedural or evidentiary rules which the courts of that state have applied in connection therewith.

The above-mentioned rule has apparently been followed in California more because of the doctrine of stare decisis than because of the soundness of the rule. This is clearly the situation in the case of City of Los Angeles v. Deacon, 119 Cal.App. 491, 7 P.2d 378, 380, as revealed by the following quotation from the concurring opinion: "I concur in the judgment. Not that I am particularly impressed with the 'righteousness' of it, but because I believe that (contrary to the rule in many other jurisdictions) it is in accordance with the adopted policy of the law of this state, as expressed in the several opinions * * * rendered herein. But aside from such authority, to my mind it is incongruous to, and quite at variance with, our ordinary notions relative to the administration of justice that a judgment must be reversed simply and solely because, according to the 'rules of the game,' certain facts pertaining to pertinent and concededly relevant conditions, the effect of which would be but to present evidence, from a consideration of which the ultimate truth might be ascertained by the court, were 'erroneously' admitted in evidence."

That rule has not been blindly followed, even in California, for the case of Joint Highway District No. 9 v. Ocean Shore R. R., 128 Cal.App. 743, 18 P.2d 413, 422, held as follows: "* * * Here several qualified witnesses produced by respondents gave competent testimony on market value on direct examination. The fact that some of respondents' witnesses may have been permitted to give other testimony on direct examination, which testimony should have been permitted only on cross-examination, is not sufficient ground upon which to predicate a motion to strike

all of the testimony of all of said witnesses. We are unable to see where any error found in the record has resulted in any prejudice to appellant. We believe that our conclusion in this regard is to some extent shared by counsel for appellant, for in the concluding portion of the reply brief it is stated: 'The trial court correctly interpreted the law in refusing to consider estimates based on duplication costs, and being controlled entirely by what the land would bring in the open market for all purposes including railroad purposes.' We may further state that much of the alleged objectionable testimony of these witnesses had to do with the strategic location of the land and the nature of the improvements thereon, tending to show its availability for transportation purposes. Under the circumstances in the present case we believe that such testimony was proper on direct examination. We have found no authority presenting facts on all fours with those before us, but the facts found in North Shore R. Co. v. Pennsylvania Co., 251 Pa. 445, 96 A. 990, are somewhat similar. The decision in that case supports the view that testimony of the character referred to is admissible. * * *"

Furthermore, in 1937, the California Legislature saw fit to abrogate this rule. It is clear that they recognized the apparent injustice of this rule of exclusion and sought to correct it, the courts of that state having shown themselves unable to cope with the stituation because of a strict adherence to the rule of stare decisis. Section 1872 of the California Code of Civil Procedure now provides: "Examination as to reason for opinion. Whenever an expert witness gives his opinion, he may, upon direct examination, be asked to state the reasons for such opinion, and he may be fully cross-examined thereon by opposing counsel. (Added by Stats.1937, p. 1606)"

Orgel on Eminent Domain, 1936, section 135, page 457, in commenting on the reason for the adoption of this minority rule, says: "* * * The exclusion is based on a doctrine of auxiliary probative policy rather than on the belief that evidence of sales is irrelevant in determining market value. These courts believe that any attempt intelligently to infer the value of the instant property from the sale price of a different property would raise too many collateral issues which could confuse an inexpert tribunal, excessively prolong the trial and subject opposing counsel to undue surprise."

As to evidence of sales of similar property on direct examination, Orgel, supra, section 135, says that the majority rule, sometimes known as the "Massachusetts rule," is: "In most jurisdictions, the courts have followed the rule of sales of other similar property in the neighborhood is admissible on direct examination to prove the market value in question. * * * It is in line with the policy of the Massachusetts courts according to which matters dealing with the proper

conduct of the trial rest in the sound discretion of the trial judge."

We believe the majority to be the better rule, and hereafter will be committed thereto. There is no reason to take away from the jury its fact-finding function. In eminent domain proceedings, one of the issues to be determined is the amount of damages, i. e., market value. The jury is entitled to know upon what facts an opinion of a witness as to market value is based. Moreover, we believe that such evidence is admissible subject to the trial court's discretion when the additional question of its probative value is raised.

Appellant also argues that the trial court erred in refusing to allow testimony as to how much rent the tenant paid to appellees. Even if this were error, appellant cannot complaint since he is prevailing on this appeal upon the issue of value of the right-of-way and of the temporary roadway condemned. As to the issue of measure of damage for condemnation of the materials used in the construction of the reservoir, the rental value of the land in this case is immaterial.

Reversed and remanded with directions to enter judgment reducing damages, (a) for the right-of-way for pipe line purposes, from $150.00 to $114.20, (b) for the temporary roadway from $150.00 to $6.80. In all other respects the judgment is affirmed.

LA PRADE, C. J., and UDALL, STANFORD and PHELPS, JJ., concur.