796 A.2d 958 (2001)
351 N.J. Super. 66
The COUNTY OF SUSSEX, Plaintiff,
v.
MERRILL LYNCH PIERCE FENNER & SMITH, INCORPORATED, a Delaware Corporation, Defendant.
Superior Court of New Jersey, Law Division, Sussex County.
Decided May 18, 2001.
*959 Dennis McConnell, Stanhope, Sussex County Counsel, for plaintiff.
Dean A. Gaver, Woodbridge, for defendant (Greenbaum, Rowe, Smith, Ravin, Davis & Himmel, attorneys).
STANTON, A.J.S.C.
I herewith send to counsel an Order For Judgment And Appointing Commissioners which I have signed in this case today. This Order For Judgment reflects the decision which I made and announced in open court on May 18.
As I indicated at that time, I think it is very clear that the County of Sussex has the authority under the Eminent Domain Act, N.J.S.A. 20:3-1 to 20:3-50, to take the leasehold premises presently occupied by Merrill Lynch in the office building known as 1 Cochran Plaza in Newton. The County initially intended to condemn a fee interest in 1 Cochran Plaza so that it could use that building as the basic office building for the governmental operations of the County of Sussex. As it turned out, the County was able to acquire 1 Cochran Plaza by negotiation with its owners, and a proceeding to condemn the entire building in fee never took place. After the County acquired ownership of the building by purchase, it attempted to negotiate a termination of all existing tenancies. The County succeeded in getting all other tenants to terminate their tenancies, except for Merrill Lynch. When the County was unable to negotiate an end to the Merrill lease tenancy, it instituted this present condemnation proceeding on March 16, 2001.
Merrill Lynch has filed an Answer in this action denying that the County of Sussex has the authority to condemn Merrill Lynch's leasehold interest in the portion of 1 Cochran Plaza presently occupied by Merrill Lynch. Merrill Lynch argues that when the County acquired ownership of the building, it acquired ownership subject *960 to the rights of existing tenants, and that the County could not thereafter seek to terminate those tenancies through an eminent domain proceeding.
It is certainly true, as a matter of basic property law, that someone purchasing a fee ownership in a property in which there are existing tenancies takes that ownership subject to the tenancies. Thus, the County in its role as owner and landlord of 1 Cochran Plaza acquired the property subject to the existing tenancies, including the tenancy of Merrill Lynch. In its capacity as landlord, the County would be obliged to comply with the various terms and conditions of the lease under which Merrill Lynch held the premises. Saying that, however, does not mean that the County, as a governmental entity, lacks the right to use its eminent domain powers with respect to the tenancy. The power that governmental agencies have to condemn property includes the power to condemn the fee interest, and it also includes the power to condemn lesser interests. It is fairly common, for example, that a governmental entity will condemn a fee ownership in property, and that it will simultaneously, as an incident of that condemnation, condemn and take all the tenancy interests in the property. I personally have handled many scores of condemnation cases in which such incidental condemnation of tenancies has occurred. It is factually very rare for a governmental entity to condemn a leasehold interest in a separate proceeding (in fact, having handled the initial condemnation proceedings in every condemnation action instituted in Morris and Sussex Counties since 1985, I have never before encountered such a condemnation), but, conceptually, there is absolutely no doubt that the power of a governmental entity to condemn interests in property extends to the interest of a tenant in property.
I note that we are not dealing in this case, even arguably, with a situation in which a governmental entity which owns real estate leases a portion of it to a tenant, and then, when it has a landlord/tenant dispute with the tenant, attempts to use its condemnation power to manipulate the tenant out of the tenant's normal rights. Such a situation would present very different equities than we have in this case. It is clear from the general circumstances of this case that the County of Sussex has a straightforward, non-manipulative interest in 1 Cochran Plaza. It wished to acquire the entire building for use as governmental offices. It was able to do that by negotiation rather than condemnation, and, having acquired ownership of the property as an incident of that, it desires to terminate the tenancy of Merrill Lynch. The County is not seeking deviously to get some landlord/tenant advantage over Merrill Lynchthe County simply wants to get the space occupied by Merrill Lynch for its own use as part of its general acquisition of 1 Cochran Plaza.
The acquisition by the County of 1 Cochran Plaza and its desire to terminate the tenancy of Merrill Lynch and to occupy the space now used by Merrill Lynch is, of course, unsettling and disruptive to Merrill Lynch. It is also true that a tenant such as Merrill Lynch would not have been expected to contemplate when it entered into its lease for the premises that its leasehold would be condemned. But the fact that the condemnation is disruptive is simply one of the unpleasant facts of life which all of us are required to accept from time to time. Merrill Lynch is entitled to get full and adequate compensation for the taking, and it is entitled to relocation assistance. Those are things which will be worked out in hearings before the commissioners and in proceedings which may be *961 necessary to resolve relocation expense disputes, if the parties are not able to agree upon relocation expense issues.
Merrill Lynch has argued that because of the language in N.J.S.A. 20:3-11, it is entitled to remain in possession of the leasehold premises until there is a final determination by the Appellate Division, and, perhaps, by the Supreme Court, of the right of the plaintiff to condemn the property interest in question. N.J.S.A. 20:3-11 reads, in full, as follows: "Failure to deny the authority of the condemnor to condemn in the manner provided for by the rules, shall constitute a waiver of such defense. When the authority to condemn is denied, all further steps in the action shall be stayed until that issue has been finally determined." Merrill Lynch argues that the language "has been finally determined" means that all appellate processes must be fully and finally played out before the condemnor can get possession of the property in question. Merrill Lynch cites Township of Bridgewater v. Yarnell, 64 N.J. 211, 314 A.2d 367 (1974) in support of that argument.
In general, when a public entity exercises its power of eminent domain, it is entitled to possession of the property in question as soon as it has filed a complaint, filed a declaration of taking and paid the amount called for in its estimation of just compensation for the taking. See N.J.S.A. 20:3-4. It is true that, in the typical condemnation case, the defendant does not deny the right to take. The right to take is usually so clear that it is not denied, and, in the typical condemnation case, the only dispute between the parties is as to the amount that should be paid for the taking. When that is so, it is entirely appropriate for possession to be taken by the condemnor as soon as a declaration of taking has been filed and the estimated fair compensation has been paid. Of course, in the case in which the defendant denies that the condemnor is authorized to take the property, it is appropriate to postpone physical occupancy of the property by the plaintiff until the Court has ruled on the basic validity of the proposed taking. The basic legislative intent of N.J.S.A. 20:3-11 is to make sure that, where there is a denial of the authority to take, there is no ousting of the defendant from possession of the property until the Court has made a definitive ruling to the effect that the taking is one which is authorized by law.
In this case, I made a final oral ruling on May 18 that the County had the authority to take the leasehold interest of Merrill Lynch by condemnation, and I have today signed a written judgment embodying that finding. The judgment which I signed today is a final ruling on the issue of the authority to condemn. The County's authority to condemn "has been finally determined" within the meaning of N.J.S.A. 20:3-11. Under the defendant's interpretation of N.J.S.A. 20:3-11, the defendant would have an automatic stay with respect to the effect of that final judgment which could not be altered by any court until the Appellate Division makes a final ruling on any appeal which might conceivably be taken from my judgment, and, beyond that, there would also be an automatic stay until the Supreme Court had either denied certification, or, having granted certification, made a final ruling on any appeal before the Supreme Court. If that interpretation were correct, any defendant could delay the taking of possession of real estate by a condemnor for an indefinitely long period simply by denying that the condemnor had the authority to condemn.
I note that it is fairly usual for an appeal to the Appellate Division to take a year before there is a final appellate decision, *962 and if the case ends up being taken by the Supreme Court on certification, it is common for that court to take a year before reaching a final decision. Under the defendant's interpretation of N.J.S.A. 20:3-11, the "automatic stay" of that statutory provision would make it likely that a condemnor could be denied possession for a considerable period of time by the unilateral determination of a defendant to deny the authority to condemn. Under defendant's interpretation of N.J.S.A. 20:3-11, it is not only the trial court which is denied the authority to grant prompt possession of property to a condemnor, but the appellate courts are also denied the authority to grant such possession until the last appellate ruling has been made in the case. Although in some special cases the appellate courts might move rapidly to come up with a final determination on the issue of the authority to condemn, the likelihood is, as I noted above, that the appellate proceedings might well take a year to reach final determination. The legislature simply cannot have intended to give to individual defendants in condemnation cases the arbitrary power to preclude occupancy of property by a condemnor for what is likely to be a long period of time by a simple statement of denial of authority to condemn inserted in a pleading.
As a very broad proposition, once a trial court has entered a final judgment in virtually every kind of case which exists, there is an immediate right for the successful party to have the judgment enforced. Of course, in the interest of justice, a trial court frequently enters a stay with respect to the enforcement of all or a part of its judgment while appellate proceedings are under way. The decision of a trial court to grant or deny a stay of its judgment is subject to immediate review by the appellate courts. Although it is common for there to be no stay of judgment entered while an appeal is pending, it is also common for there to be no stay of a judgment, even though an appeal is pending. The reality is that large sums of money are transferred pursuant to judgments which are still under appeal, important property interests are transferred under judgments which are subject to appeal, custody of children is enforced under judgments which are subject to appeal, criminal defendants go to prison under judgments which are subject to appeal.
The determination of whether a judgment should be stayed pending appeal is one that very much depends on the facts, circumstances and equities of each individual case. It is inconceivable that the legislature could have intended to obliterate the entire jurisprudence governing the granting of a stay of judgment insofar as it applies to this single (not particularly important compared to some other issues) issue of the authority to condemn. Furthermore, if the legislature did have such an unusual intent when it adopted N.J.S.A. 20:3-11, there is a real question as to whether the legislature would have the constitutional right to interfere so unusually and drastically with the exercise of judicial discretion with respect to enforcement of judgments. I will not interpret N.J.S.A. 20:3-11 in the way plaintiff argues it should be interpreted, absent an Appellate Division or Supreme Court decision unequivocally requiring me to do so.
Defendant has argued that Township of Bridgewater v. Yarnell, supra, compels me to reach precisely the result which I have indicated I would be reluctant to reach with respect to the enforcement of a trial court judgment on the issue of authority to condemn. I do not believe that Township of Bridgewater v. Yarnell has the impact which defendant claims for it. In the first place, I note that Township of Bridgewater *963 v. Yarnell is factually very different from our present case. That case involved the need to determine whether the route selection for a sanitary sewer line had been reasonably made. Further, it involved a situation in which the defendants had made out a prima facie showing that the selection of a route for the sewer line had been arbitrarily made by the condemnor. In our case, there is no issue of arbitrariness of any kind with respect to the exercise of the power to condemn. The County of Sussex has need of office space for its governmental operations, and it has proceeded in a perfectly straightforward way to acquire that office space. It has acquired the fee ownership of 1 Cochran Plaza in pursuit of that goal, and it is now attempting to complete the purpose of that acquisition by terminating Merrill Lynch's tenancy.
I note that in Township of Bridgewater v. Yarnell the Supreme Court did not really consider the implications of a ruling to the effect that N.J.S.A. 20:3-11 blocks the occupancy of property until all appellate processes are exhausted. Instead of discussing that issue and articulating its views with respect to it, the Court simply noted that "Both parties now agree that the cited sections mean that all further proceedings in the condemnation action as well as all work within a disputed section of the route must be stayed until the question of route is completely determined, including exhaustion of the appellate process if appellate review is sought. The Appellate Division was therefore in error in denying the stay pending appeal." 64 N.J. at 215, 314 A.2d 367. The kind of automatic legislatively imposed stay of judgment which defendant seeks to have us find in N.J.S.A. 20:3-11 would be so extraordinary and so out of keeping with well established jurisprudence that I would not determine it to exist on the basis of the kind of ruling which the Supreme Court made in Township of Bridgewater v. Yarnell. The Supreme Court's treatment of the issue in Township of Bridgewater v. Yarnell is simply too passing and peripheral to compel the kind of result which the defendant seeks.
Aside from urging a delay in occupancy because of N.J.S.A. 20:3-11, the defendant has also urged that I should delay occupancy because of the disruptive impact that granting occupancy would have on the business of Merrill Lynch and because of the great difficulty which Merrill Lynch has experienced in attempting to relocate the business operations which it is now conducting at 1 Cochran Plaza to another location in the Newton area. I am sure that much of what the defendant says about the adverse impact of the taking on its business is correct, and I am sure that it has been experiencing considerable difficulty in finding alternate premises. However, I note that defendant has known since the summer of 2000 that the County wished to terminate its tenancy. I also note that, from the County's viewpoint, occupancy of the Merrill Lynch premises is not simply a question of giving that space to the County for its own governmental office operations. In addition to that issue, there are special tax law implications to a continuing occupancy of any portion of 1 Cochran Plaza by the defendant. So long as a commercial tenant such as Merrill Lynch is located in 1 Cochran Plaza, the entire property is subject to real estate taxes. Those taxes amount to $102,145.00 per year. In addition, so long as a commercial tenant occupies a portion of the property, the County is precluded from issuing non-taxable notes for the loan which it has taken out to acquire the property. The taxable notes which are presently in existence with respect to the property come due on July 20, 2001. If the defendant is still in possession of 1 Cochran *964 Plaza on that date, the County will have to issue new taxable notes instead of non-taxable notes. The failure to be able to issue non-taxable notes will cost the County approximately $256,500.00 per year in terms of additional interest which it will have to pay on the notes.
Because Merrill Lynch does have real problems with respect to relocating its business, I have decided to delay the taking of possession by the County for approximately two months from May 18, 2001, which was the date on which I ruled that the County had the right to condemn the leasehold and to take possession of the leased premises. However, because of the impending July 20, 2001 deadline with respect to the reissuance of notes, and because of the large expense that the issuance of taxable notes would impose upon the County, I have decided that the defendant must vacate the premises by July 15, 2001. That is the only stay of enforcement of the judgment which I have signed today which I will grant. If the defendant wishes a further stay, it will have to seek it from the Appellate Division.