83 P.3d 608

**ORSETT/COLUMBIA LIMITED PARTNERSHIP, an Arizona Limited Liability Partnership, Defendant/Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona In and For MARICOPA COUNTY and the Honorable William J. O'Neil, Judge, Arizona Superior Court, Pinal County, Respondents,**

and

**Maricopa County, A Municipal Corporation, Plaintiff/Real Party In Interest.**

No. 1 CA–SA 03–0171.

Court of Appeals of Arizona, Division 1, Department C.

Jan. 29, 2004.

Snell & Wilmer, L.L.P. By Christopher H. Bayley Steven D. Jerome, Phoenix, Attorneys for Defendant/Petitioner.

Thomas K. Irvine, Larry J. Wulkan, Phoenix, Attorneys for Real Party in Interest.

## OPINION

HALL, Judge.

¶ 1 Does the power of eminent domain enable a county to condemn a mere leasehold interest[1] in a privately-owned building? That is the question presented in this special action. Relying on *In re Forsstrom,* 44 Ariz. 472, 38 P.2d 878 (1934) (*Forsstrom*), the superior court interpreted Arizona Revised Statutes (A.R.S.) section 12–1113 (2003) to authorize Maricopa County's (County) condemnation of a twenty-three month leasehold in private property for use by the Peoria Justice of the Peace Court. Because we conclude that § 12–1113 does not allow condemnation of a mere leasehold interest in a building, we vacate the superior court's order granting the County immediate possession of the premises.

---

1. We use the phrase "mere leasehold interest" to distinguish the facts of this case from one in which the condemnor is also seeking to acquire,

## FACTS AND PROCEDURAL HISTORY

¶ 2 Starting in 1989, H.C. Properties, USA Inc. leased commercial space located in Columbia Square Center (the Property) in Peoria, Arizona to the County for use by the Peoria Justice of the Peace Court. The terms of the original lease expired in 1995.

¶ 3 Pursuant to subsequent lease amendments between the County and Orsett/Columbia Limited Partnership (Orsett), the successor-in-interest to H.C. Properties and current owner of the Property, the lease was extended to January 31, 2003, with the final extension providing that the County "shall have no further right or option to extend the Lease."

¶ 4 The parties failed to negotiate a new lease and, when the County remained in possession after January 31, 2003, Orsett instituted a forcible entry and detainer action. The superior court granted the County's motion to dismiss ruling that the County could remain in possession as a holdover tenant until July 31, 2003 pursuant to an express holdover provision in the lease agreement.

¶ 5 In June, 2003 the County filed a complaint in eminent domain seeking to condemn a twenty-three month leasehold interest in the Property on the same terms, except for rent, as set forth in the lease agreement. The County also applied for an order granting it immediate possession of the premises. *See* A.R.S. § 12–1116(E) (2003). Following a hearing, the superior court entered an order permitting the County to remain in possession of the Property and granting it a leasehold interest by condemnation from August 1, 2003 through June 30, 2005. Specifically, the trial court reasoned:

> [The County] does not seek to 'extend' its lease but rather to acquire by condemnation a leasehold interest in the property for the continued operation of the Peoria Justice of the Peace Court. No extension is sought but rather a taking of a leasehold interest upon the identical terms which previously existed between [the County

or has already acquired, the underlying fee simple interest in the property. *See infra* ¶¶ 14 and 16.

and Orsett], with the exception of the rent to be paid.

Orsett filed a petition for special action seeking relief from this ruling.

## JURISDICTION

¶ 6 We accept jurisdiction over this special action because there is no equally plain, speedy or adequate remedy by appeal. Ariz. R.P. Spec. Act. 1. Indeed, Orsett's only adequate remedy is through special action. *See Bailey v. Myers*, 206 Ariz. 224, 226, ¶ 8, 76 P.3d 898, 900 (App.2003) (petitioner's only adequate remedy from an order granting respondent immediate possession of petitioner's commercial property is through special action). Moreover, we can adequately determine the purely legal issue presented—the interpretation of a statute—on the record before us. *See Moore v. Browning*, 203 Ariz. 102, 104, ¶ 2, 50 P.3d 852, 854 (App.2002) (special action jurisdiction appropriate when issue regards statutory interpretation and can be determined solely on record).

## DISCUSSION

¶ 7 The County makes a two-part argument to support its position that it was entitled to use its power of eminent domain to condemn a leasehold interest in a small part of a large shopping center. Relying on *Forsstrom*, the County asserts that a leasehold interest is "just one stick in the bundle of property rights," any one of which can be acquired by eminent domain. The County then urges that it has the right under Arizona's eminent domain statutes, indeed the obligation, to "take only what it needs." [2] *See, e.g., Town of Williams v. Perrin*, 70 Ariz. 157, 160, 217 P.2d 918, 920 (1950). Therefore, according to the County, it properly exercised its right of eminent domain by taking only what it needed—a leasehold interest for a period of twenty-three months.

¶ 8 In assessing the validity of the County's argument, we begin by observing that a county has the right to exercise the power of eminent domain only as granted it by the State. "A county is a creature of the state and while no part of sovereignty is vested in the county, it may be given the right to exercise that power [by statute], but in doing so it is acting as the agent of the sovereign state." *County of Maricopa v. Anderson*, 81 Ariz. 339, 343, 306 P.2d 268, 271 (1957). Our legislature has delegated to counties, as political subdivisions of the State, the right to exercise that power for the limited purposes enumerated in A.R.S. § 12–1111 (2003).[3] Hence, a county may not exercise the power of eminent domain for purposes other than those conferred expressly in, or by necessary implication from, § 12–1111. For example, in *City of Phoenix v. Donofrio*, 99 Ariz. 130, 133–34, 407 P.2d 91, 93 (1965), our supreme court held that the language in § 12–1111(3) authorizing a city to exercise the right of eminent domain for "[b]uildings and grounds" did not allow the city to condemn private property for parking areas to be used in conjunction with city buildings. Section 12–1111 is interpreted "narrowly because the power of eminent domain belongs to the state, and it is for the legislature to decide when that power should be delegated to another body." *City of Mesa v. Smith Co. of Arizona, Inc.*, 169 Ariz. 42, 44, 816 P.2d 939, 941 (App.1991) (delegation of eminent domain power did not authorize cities to condemn private property for cemeteries).

¶ 9 The reasons for strictly construing the purposes for which the delegated power of eminent domain may be exercised apply with equal force when interpreting § 12–1113, which describes the nature or extent of the interest or estate that may be taken for a public use.

The extent of the authority of the condemnor, with respect to the quantum of the estate to be taken, depends on the statute

---

**2.** This principle, sometimes referred to as the "reasonable necessity" rule, limits a condemnor to taking no more of an interest in the property than is reasonably necessary to serve the public purpose desired. 3 Julius L. Sackman et al., *Nichols on Eminent Domain* § 9.02[1] (Rev.3d ed.2003).

**3.** As relevant to this case, § 12–1111 provides: "[T]he right of eminent domain may be exercised by . . . a county . . . for the following uses:

. . . .

3. Buildings and grounds for the use of a county. . . ."

conferring the power. The nature or extent of the interest or estate which the condemnor may be empowered to acquire is solely within the province of the legislature to determine .... The provisions of statutes with respect to the extent of the interest or right which may be taken are to be strictly construed, and the quantum of the title to be taken will not be extended by implication.

29A C.J.S. *Eminent Domain* § 417 (1992); *see also* 1A Julius L. Sackman et al., *Nichols on Eminent Domain,* § 3.03[6][b] (Rev.3d ed. 2003) ("The [condemnor] will not be allowed to take the lands of another unless such right comes clearly and unmistakably within the limits of the authority granted. Whatever is not plainly given is to be construed as withheld.").

¶ 10 Moreover, a policy of strict construction protects private property rights from overreaching by the government. As we recently commented in the context of the private versus public use distinction in Article 2, Section 17 of the Arizona Constitution, "[t]he framers of our Constitution understood that one of the basic responsibilities of government is to protect private property interests." *Bailey,* 206 Ariz. at 227, ¶ 11, 76 P.3d at 901.

¶ 11 With these principles in mind, we now turn to the County's argument that it was entitled to condemn merely a leasehold interest pursuant to § 12–1113, thereby taking no more and no less than what it needed. As a general proposition, we agree with the County's assertion that, in its unlimited sense, the power of eminent domain includes the right to condemn less than a fee interest, or less than all of the "sticks" in the bundle of property rights, including a leasehold interest. *See, e.g., United States v. General Motors Corp.,* 323 U.S. 373, 377–78, 65 S.Ct. 357, 89 L.Ed. 311 (1945). The issue raised by the circumstances of this case, however, is not whether the legislature *could* authorize political subdivisions to condemn mere leasehold interests; rather, the question is whether the legislature did authorize such acts when it enacted § 12–1113.

¶ 12 Section 12–1113, entitled "Estates in land subject to condemnation," provides:

The interests, estates and rights in lands subject to be taken for public use, are:

1. A fee simple, when taken for public buildings or grounds or for permanent buildings, for use in connection with a right of way, or for an outlet for the flow or a place for the deposit of tailings or refuse from a mine or for irrigating ditches.

2. An easement when taken for any use other than those set forth in paragraph 1.

3. A right of entry upon and occupation of lands, and the right to take therefrom earth, gravel, stone, trees and timber necessary for a public use.

4. A use in the water of a stream, river or spring.

¶ 13 Citing *Forsstrom,* the County asserts, and the trial court agreed, that the authority granted it by § 12–1113(1) to condemn a "fee simple" in a building when taken for a public use also "encompass[es] the power to condemn a leasehold interest in the same building." In that case, as part of a street regrading project, the City of Tucson sought to condemn appurtenant easements of ingress and egress belonging to real property owned by the Forsstroms. 44 Ariz. at 475–76, 38 P.2d at 880–81. The Forsstroms contended that mere easements could not be condemned pursuant to § 12–1113(1) [4] because they were not fee-simple property interests. *Id.* at 494–95, 38 P.2d at 887–88. The supreme court disagreed, explaining that the words "fee simple" do not refer to the rights to be condemned but rather to the character of the right that is acquired in the condemned property:

We are of the opinion that the true meaning of the word is simply all the property in the thing referred to, or, in other words, the largest estate therein which a person may have. We think, therefore, that when any right or interest in land is taken by eminent domain for use in connection with a right of way, the words 'fee simple' in

---

4. The statute construed in *Forsstrom,* Ch. 23 § 1333 of Rev.Code 1928, was identical in all material aspects to the current statute, § 12–1113.

[§ 12–1113(1)] are intended to mean that, whatever the right or interest taken may be, *it is taken in its entirety and as a perpetuity.*

*Id.* at 495, 38 P.2d at 888 (emphasis added) (citations omitted).[5] In other words, because the easements were being taken for use in connection with a right of way, a property interest included within § 12–1113(1), the city was acquiring a fee simple interest in accordance with the statute.

¶ 14 The County seeks to analogize its effort to condemn only a leasehold in the Property to the condemnation of the easements in *Forsstrom.* However, the County's reliance is misplaced because, as explained in *Forsstrom,* the words "fee simple" in the statute refer to an interest that is acquired "in its entirety and as a perpetuity." By its very nature, a mere leasehold interest, as commonly understood, cannot be taken in perpetuity. Accordingly, § 12–1113(1) does not permit a political subdivision to condemn a leasehold interest in private property to be used as public buildings or grounds except as part of a proceeding that will culminate in the acquisition of title in fee simple. "[A] court will not inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions." *Donofrio,* 99 Ariz. at 133, 407 P.2d at 93.

¶ 15 Our rejection of the County's argument is further supported by juxtaposing § 12–1113(1) with § 12–1113(2), which permits an easement to be taken "for any use other than those set forth in paragraph 1." Construed together, these paragraphs permit a condemnor to obtain an easement—including a temporary right of occupancy and use in lands—except for the use of a public building or grounds, permanent buildings, and the other uses specified in paragraph 1. Hence, as the County seemingly recognizes, § 12–1113(2) does not apply because the proposed use of the Property—as a public building—is a use specified in § 12–1113(1).

¶ 16 The County nonetheless cites several other Arizona cases that it claims support the proposition that it may condemn less than a fee simple in a building. But in each of these cases, as well as in other Arizona cases that we reviewed, the interest acquired was either not one in fee simple or was an existing lease in property in which the political subdivision had acquired the underlying fee. For example, the County cites *Town of Williams v. Perrin,* 70 Ariz. 157, 217 P.2d 918 (1950) as a case wherein the supreme court looked "favorably" on the Town's condemnation of materials taken from a ten-acre tract and of a temporary roadway, which the County characterizes as a form of lease. *Town of Williams,* however, involved issues concerning valuation and not whether the particular interests could be condemned for public use. 70 Ariz. at 159–64, 217 P.2d at 919–23. In any event, neither of the takings implicated § 12–1113(1). The Town's taking of materials for use in the construction of a reservoir would have been proper pursuant to § 12–1113(3) and the temporary roadway was in the nature of an easement subject to condemnation pursuant to § 12–1113(2). *Id.* at 159, 217 P.2d at 919. Likewise, other cases cited by the County are distinguishable because in none of the cases did the political subdivision end up holding a mere lease in a building at the conclusion of the condemnation proceedings. *See, e.g., City of Sedona v. Devol,* 196 Ariz. 178, 182, 993 P.2d 1142, 1146 (App.1999) (temporary construction easement); *Town of Paradise Valley v. Laughlin,* 174 Ariz. 484, 489, 851 P.2d 109, 114 (App.1992) (permanent easement for roadway purposes characterized by court as fee simple interest taken in connection with right of way); *City of Scottsdale v. Eller Outdoor Advertising Co. of Arizona,* 119 Ariz. 86, 88, 579 P.2d 590, 592 (App.1978) (condemnation of six billboards erected pursuant to a lease with previous

---

5. Although portions of *Forsstrom* have been overruled, *see County of Mohave v. Chamberlin,* 78 Ariz. 422, 429–30, 281 P.2d 128, 132–33 (1955) (holding that just compensation clause in article 2, section 17 of the Arizona Constitution is self-executing) and *State ex rel. Morrison v. Thelberg,* 87 Ariz. 318, 323–24, 350 P.2d 988, 991–92 (1960) (holding that a property owner whose right of access to a highway is damaged or destroyed is entitled to just compensation), its interpretation of § 12–1113 has not been overruled and it continues to be cited as the authoritative case. *See Town of Paradise Valley v. Laughlin,* 174 Ariz. 484, 488–89, 851 P.2d 109, 113–14 (App.1992).

owner after city purchased the real estate for urban renewal).

¶ 17 Given the clear statutory scheme enacted by our legislature, we also find unpersuasive citations by the County to cases from other jurisdictions interpreting or applying statutes that either specifically authorize or do not expressly forbid condemnation of less than fee interests in buildings. For example, the County quotes *County of Sussex v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 351 N.J.Super. 66, 796 A.2d 958, 960 (2001) for the following proposition: "The power that government agencies have to condemn property includes the power to condemn the fee interest, and it also includes the power to condemn lesser interests." This statement, however, must be understood in the context of the relevant New Jersey statutes that authorize a condemnor to acquire less than a fee simple title in buildings.[6] Moreover, Sussex County, as did the city in *City of Scottsdale,* acquired ownership of the property (here, a building) by purchase and was seeking to extinguish an existing tenancy interest. *Id.* at 959.

¶ 18 Similarly, federal case law is distinguishable because the statutory authority granted the United States in condemnation-type proceedings is typically very broad. *See, e.g., United States v. General Motors Corp.,* 323 U.S. at 375, 65 S.Ct. 357 (Second War Powers Act, 50 U.S.C. § 632 (1942), permitted Secretary of War to "acquire, by condemnation, any real property, temporary use thereof, or other interest therein which shall be deemed necessary for military or other war purposes"); *United States v. Bedford Assoc.,* 657 F.2d 1300, 1315–18 (2nd Cir.1981) (United States acquired a leasehold interest pursuant to Quiet Title Act, 28 U.S.C. § 2409a(b) (1976), which permits the United States to "retain ... possession or control of the real property" after an adverse judgment, contingent upon payment of "just compensation"). Conversely, in Arizona, the interests in property that the State or its political subdivisions can acquire by eminent

domain are delimited by § 12–1113 and do not include mere leasehold interests in buildings.

¶ 19 In summary, § 12–1113 does not authorize the County to condemn a mere leasehold interest in a privately-owned commercial building. The superior court erred by concluding otherwise. Accordingly, the order granting the County immediate possession is vacated and we remand this case for further proceedings consistent with this opinion.

CONCURRING: DANIEL A. BARKER and DONN KESSLER, Judges.

---

**6.** *See* N.J. Stat. Ann. § 20:3–2(d) (2003); (" 'Property' means land, or any interest in land, and any building ....."); N.J. Stat. Ann. § 20:3–20 (2003) ("The title to property condemned and acquired by the condemnor ... shall be a title in fee simple ... [except if] the complaint or any amendment thereof shall specify a lesser title, the lesser title so specified shall be the title condemned and acquired.").