816 P.2d 939

**CITY OF MESA, a municipal corporation, Plaintiff–Appellant, Cross Appellee,**

v.

**SMITH COMPANY OF ARIZONA, INC., an Arizona corporation; George D. Smith and Cora Susan Smith, husband and wife; John D. Smith, and Karen Smith, husband and wife; James D. Smith, an unmarried man, Defendants– Appellees, Cross Appellants.**

No. 1 CA–CV 90–061.

Court of Appeals of Arizona, Division 1, Department C.

Aug. 22, 1991.

Neal J. Beets, Mesa City Atty. by Neal J. Beets and Charles S. Hover, III, Asst. City Atty., Mesa, for plaintiff-appellant, cross appellee.

Perry, Pierson & Kolsrud by Russell A. Kolsrud and David J. Palmer, Phoenix, for defendants-appellees, cross appellants.

## OPINION

McGREGOR, Judge.

The primary issue on appeal is whether the legislature has authorized Arizona municipalities to exercise the power of eminent domain to acquire property for a city owned public cemetery. We conclude that the legislature has not authorized such use of the eminent domain power and affirm the judgment of the trial court.

### I.

In June 1988, the City Council of the City of Mesa (the City) adopted a resolution declaring that the acquisition of certain property was necessary to expand the City's public cemetery. Pursuant to this authority, the City filed an action in eminent domain condemning certain parcels of property, including parcels owned by the Smith Company of Arizona, Inc. and the individual defendants (Smiths). In their answer, Smiths argued that the City had no express power to condemn their property for cemetery expansion purposes. The City and Smiths filed motions for summary judgment. The trial court granted Smiths' motion on the ground that the legislature had not expressly authorized the City to condemn property for cemetery uses.[1] The trial court denied Smiths' application for an award of attorneys' fees and costs. That ruling is the subject of Smiths' cross appeal.

### II.

In Arizona, a municipality may exercise the right of eminent domain only if it establishes that the property is being condemned for a public use, that the use is one authorized by law, and that the taking is necessary to such use. Arizona Constitution, art. 2, § 17 and A.R.S. § 12–1112. Moreover, "a municipality can only exercise the right of eminent domain when it is conferred upon it by the legislature expressly or by necessary implication." *City of Phoenix v. Donofrio*, 99 Ariz. 130, 133, 407 P.2d 91, 93 (1965). The City relies on A.R.S. § 12–1111 and its city charter as authority for its claim that the legislature has delegated the necessary authority. We examine each of those arguments.

### A.

The City first asserts that the legislature delegated to it the power to condemn private property for the purpose of expanding a public cemetery through A.R.S. § 12–

---

1. In anticipation of this appeal, the trial court also ruled that the proposed use of the property was a public use, that acquisition of the property was necessary for that use, that the City was not estopped from maintaining this action, and that the doctrine of laches does not bar the action. Smiths do not contest these rulings on appeal.

1111, which lists the purposes for which the power of eminent domain may be exercised. That statute provides in part:

> Subject to the provisions of this title, the right of eminent domain may be exercised by the ... city ... for the following uses:
>
> ....
>
> 2. Buildings and grounds for any public use of the state and all other public uses authorized by the legislature.
>
> 3. Buildings and grounds for the use of a ... city....
>
> ....
>
> 6. Roads, streets and alleys, and all other public uses for the benefit of a county, city, town or village, or the inhabitants thereof, which is [sic] authorized by the legislature....

A.R.S. § 12–1111.

The City argues that section 12–1111 delegates the needed authority in two ways. The first basis for the City's statutory argument derives from the language in subsections 2 and 6 permitting cities to exercise the right of eminent domain for all uses "authorized by the legislature." The City interprets that language as incorporating all of Title 9,[2] which generally defines the powers of Arizona municipalities. Because it is authorized to own and operate a public cemetery by A.R.S. §§ 9–240.B.9, .11 and 9–499.01, the City maintains, use of land for a cemetery constitutes a use "authorized by the legislature" and thus falls within the City's power of eminent domain. Smiths, in contrast, assert that the reference in section 12–1111 to uses "authorized by the legislature" refers to those uses for which the legislature has expressly authorized cities to exercise the power of eminent domain. See, e.g., A.R.S. §§ 9–276.-A.20 (streets and sewers); 9–462.02 (nonconforming uses); 9–511.C (utilities); 36–1478 (redevelopment projects). We conclude that the interpretation urged by Smiths is more consistent with the legislative language and purpose of the eminent domain statutes.

"The legislative plan for the exercise of the power of eminent domain in Arizona is firmly committed to delegation for specific purposes as indicated by A.R.S. § 12–1111 (1956)." Donofrio, 99 Ariz. at 134, 407 P.2d at 93. In interpreting the legislative plan, we will not "inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions." Id. at 133, 407 P.2d at 93. We interpret the statutes narrowly because the power of eminent domain belongs to the state, and it is for the legislature to decide when that power should be delegated to another body.

Section 12–1111 does not expressly authorize the City to condemn private land for cemetery purposes. The power to condemn for such a use therefore exists only if it arises by implication from the express powers granted the City by the legislature. We do not construe the language of subsections 2 and 6 of A.R.S. § 12–1111 to authorize by implication the exercise by a municipality of its power of eminent domain in connection with the exercise of all its municipal powers. Such a broad construction of subsections 2 and 6 would make most of the specific grants of the power of eminent domain afforded by A.R.S. § 12–1111 superfluous because these express powers would be encompassed within the implied grant the City contends subsections 2 and 6 provide. A basic tenet of statutory construction is to avoid interpretations that render other provisions superfluous. O'Hara v. Superior Court, 138 Ariz. 247, 250, 674 P.2d 310, 313 (1983). We believe that the more reasonable construction of subsections 2 and 6 is that the reference to uses "authorized by the legislature" refers to those other statutes that specifically grant a governmental entity the power of eminent domain. Cf. City of Phoenix v. McCullough, 24 Ariz. App. 109, 536 P.2d 230 (1975) (statutory authority to condemn property for airport purposes includes power to condemn property for parking lots for the airport). For those reasons, we conclude that subsections 2 and 6 of A.R.S. § 12–1111 do not

2. A.R.S. §§ 9–101 through 9–1141.

give the City authority to condemn property for cemetery purposes.

Our interpretation of the statute is consistent with prior decisions, in which Arizona's appellate courts have declined to construe section 12–1111 as broadly as the City now urges. Recently, this court considered a similar argument in *City of Tempe v. Fleming*, 168 Ariz. 454, 815 P.2d 1 (App.1991). In that case, the city argued that the general language of subsection 6 gave it authority to acquire private property by eminent domain to abate a nuisance. Although the city's police powers clearly granted it authority to abate the nuisance, we concluded that because the legislature had not expressly delegated power to cities to abate a nuisance through eminent domain, the proposed use of the power of eminent domain was not one "authorized by the legislature." *Id.* at 456–458, 815 P.2d at 3–5. Similarly, in *Donofrio*, the supreme court held that the city could not acquire property to establish municipal parking lots through eminent domain because section 12–1111 does not delegate the power of eminent domain for that specific purpose. 99 Ariz. at 133–34, 407 P.2d at 93. *See also Town of Eaton v. Bouslog*, 133 Colo. 130, 292 P.2d 343 (1956) (power to acquire property to establish cemetery not authority to condemn private property for that purpose).

## B.

The City next argues that subsection 3 of section 12–1111, which permits a city to exercise its power of eminent domain for "[b]uildings and grounds for the use of a ... city," authorizes it to condemn private property for cemetery purposes. We disagree.

In *Donofrio*, the city sought to condemn land for a parking lot to be used for city vehicles and by persons conducting city business and asserted that the land's "ultimate" use would be for administrative buildings and grounds to meet the expanding municipal needs of the city. *Donofrio*, 99 Ariz. at 134, 407 P.2d at 94. The supreme court, affirming that statutes granting the power of eminent domain must be strictly construed and that Arizona's legislative plan for eminent domain is firmly committed to delegation for specific purposes, concluded that the statutory language could not be expanded to include condemnation for a parking lot. *Id.* at 134, 407 P.2d at 93.

This court is, of course, bound by the construction of a statute given by the Arizona Supreme Court. *In re Marriage of Thorlin*, 155 Ariz. 357, 362, 746 P.2d 929, 934 (App.1987). *Donofrio* is dispositive of the City's argument made in reliance upon subsection 3. Nothing in the record indicates that the City intends to devote the condemned property even to the "ultimate use" of administrative buildings and grounds. Because the supreme court in *Donofrio* construed subsection 3 to exclude the condemnation of grounds to be used by the city when the city did not propose the construction of a city building within the reasonably foreseeable future, we cannot construe subsection 3 to permit condemnation of grounds for a public cemetery.

The City argues that such a limiting construction of the statute will deny Arizona municipalities authority to exercise their power of eminent domain in connection with building fire stations, police stations, libraries, and other public buildings. We disagree. Such buildings fall clearly within the "buildings and grounds" provision of subsection 3 and are precisely the uses for which the legislature authorized municipalities to exercise their eminent domain power under A.R.S. § 12–1111.3. In *Donofrio*, however, the court did not acquiesce in the city's proposal that it separate "grounds" from "buildings," as the City proposes the court do in this case.[3] *Cf. City of Phoenix v. McCullough*, 24 Ariz.App. 109, 111–12, 536 P.2d 230, 232–33 (1975) (power to condemn for airport purposes included power

3. Even if the City proposed to construct buildings on the cemetery grounds, substantial question as to the applicability of subsection 3 would remain. Subsection 3 refers expressly to buildings and grounds *for the use of the city*. Subsection 6, in contrast, refers to public uses *for the benefit of a city or the inhabitants thereof*. The distinctive language used by the legislature in subsection 3 indicates that the eminent domain power conferred there refers only to buildings used directly by the city itself, rather than those intended to benefit the city's residents. Because

**46**

to condemn for parking lots to serve airport).

We hold, therefore, that A.R.S. § 12–1111 does not provide authority for the City to condemn private property for purposes of expanding its public cemetery.

### III.

■ The City argues in the alternative that its city charter provides authority to condemn private property for use as a cemetery. The City relies upon the following charter provision to support its position:

The existing municipal corporation known as the "City of Mesa" shall continue to be a body politic and corporate, with all powers possible under the constitution and general laws of Arizona as fully as though they were enumerated in this Charter, and all the rights and powers granted or to be granted to Charter cities and to cities and towns incorporated under the provisions of Title IX, A.R.S., and these further rights and powers, to wit: (A) To acquire by purchase, condemnation or otherwise, and to lease, within or without the City, land or other property necessary to establish and operate any lawful municipal function.

Mesa City Charter, art. 1, § 101. Although the City has adopted a home rule charter pursuant to its authority under Arizona law, an Arizona municipality may not expand its power of eminent domain beyond that authorized by the legislature. The exercise of the power of eminent domain is a matter of statewide concern, and any attempt to expand the power of eminent domain through municipal charter conflicts with the legislature's authority to determine the circumstances under which it chooses to delegate its power. *Donofrio*, 99 Ariz. at 134, 407 P.2d at 93 (power of eminent domain must be conferred by legislature). *Cf. Levitz v. State*, 126 Ariz. 203, 613 P.2d 1259 (1980) (because zoning is a matter of statewide concern, charter cities. must comply with Arizona statutes when adopting zoning ordinances). Because the legislature has not granted the

City the power to condemn property for public cemeteries, either expressly or by implication, the City cannot rely upon its charter to obtain the authority it seeks.

### IV.

On cross appeal, Smiths argue that the trial court erred in failing to award them attorneys' fees, to which they assert they are entitled on either of two bases. First, Smiths point out, A.R.S. § 12–348.A mandates that the court award fees when a party other than the city prevails on the merits in a civil action brought by the city. As Smiths recognize, however, A.R.S. § 12–348.F.4 [4] exempts proceedings involving eminent domain from the attorneys' fees provision. Smiths attempt to avoid that problem by contending that, because the City lacked statutory authority to bring this action, the eminent domain exemption does not apply.

■ We agree with the City that Smiths are not entitled to fees under section 12–348.A because this proceeding involves eminent domain. Although the trial court and this court concluded that the City lacked authority to condemn Smiths' private property, the City brought and pursued this action as an eminent domain proceeding. The requirement that the City pay attorneys' fees to the prevailing party in a civil action brought by the City therefore does not apply.

■ Smiths also claim they can recover fees by virtue of A.R.S. § 33–420 because the City's recording of a *lis pendens* against the property was wrongful due to the City's lack of authority to file the eminent domain action. A person who purports to claim an interest in, or a lien or encumbrance against, real property and who files a document asserting his claim, knowing that the document is forged or otherwise groundless, is liable to the owner for, among other damages, reasonable attorneys' fees and costs. A.R.S. § 33–420.C. We conclude that section 33–420 does not apply to this case. The City's eminent domain action clearly was "an ac-

this record does not reveal that the city intends to construct any buildings on the proposed cemetery grounds, we need not address this question.

**4.** A.R.S. § 12–348.F.4 has been revised by Laws 1990, ch. 360, § 1 and is now A.R.S. § 12–348.H.4.

tion affecting title to real property." A.R.S. § 12–1191.A. The City attempted to condemn the property on which it filed its *lis pendens* and asserted arguable grounds to pursue the eminent domain action. Because the City had some basis for its attempt to condemn Smiths' real property, its notice of *lis pendens* was not groundless. *See Coventry Homes, Inc. v. Scottscom Partnership,* 155 Ariz. 215, 218, 745 P.2d 962, 965 (App.1987) (must be some basis for assertion that litigation will affect title to real property).

### V.

For the foregoing reasons, we affirm the judgment of the trial court. We deny Smiths' request for attorneys' fees associated with this appeal, as they have failed to identify the statute or rule upon which they rely in requesting such an award.

GRANT, P.J., and LANKFORD, J., concur.