150 P.3d 245

**CITY OF PHOENIX, a municipal corporation, Plaintiff/Appellee,**

v.

**Sherry A. HARNISH, an unmarried woman, Defendant/Appellant.**

No. 1 CA–CV 05–0023.

Court of Appeals of Arizona, Division 1, Department D.

Dec. 28, 2006.

Ayers & Brown PC By Charles K. Ayers, Melinda A. Bird, Phoenix, Attorneys for Plaintiff/Appellee.

Mariscal Weeks McIntyre & Friedlander PA By James T. Braselton, Michael S. Rubin, Charles H. Oldham, Phoenix, Attorneys for Defendant/Appellant.

## OPINION

GEMMILL, Judge.

¶ 1 Sherry A. Harnish appeals the trial court's order granting the City of Phoenix's application for immediate possession of her real property. Harnish argues that the trial court improperly interpreted Arizona Revised Statutes ("A.R.S.") section 9–511 (1996) to allow the City to exercise its power of eminent domain beyond its territorial limits by taking her property for use as a nature preserve. Because we conclude that the State has not delegated to the City the power to condemn property outside its boundaries for this particular purpose, we reverse and remand for entry of judgment in favor of Harnish.

## BACKGROUND

¶ 2 In 2000 Harnish purchased an undeveloped five-acre parcel of real property (the "Property") located in an unincorporated portion of Maricopa County, outside the City limits. In 2001 the Phoenix City Council adopted an ordinance approving the acquisition of twenty-two parcels of land, including the Property, for the establishment of a nature preserve (the "Preserve"). In 2002 the City notified Harnish that it might acquire the Property. The City subsequently contacted Harnish to discuss purchasing the Property, but no agreement was reached.

¶ 3 In 2003 the City filed a complaint for eminent domain and sought immediate possession of the Property. After an evidentiary hearing, the trial court granted the City's application for immediate possession. The court ruled that the City was authorized to

1. The trial court also found that the condemnation was for a public use, necessity of the condemnation was proven, the City fulfilled its obligation to balance the "greatest public good" with the "least private injury" in accordance with

condemn the Property pursuant to A.R.S. § 9–511 because the Preserve fulfills a public park purpose.[1]

¶ 4 Thereafter, the trial court conducted a jury trial to determine the amount of compensation to be paid by the City to Harnish for the Property. The jury found the amount of just compensation to be $590,527. Harnish appeals.

## STATUTORY INTERPRETATION

¶ 5 The City relies primarily upon A.R.S. § 9–511 to support its argument that it has authority to condemn real property outside its boundaries for use as a public park:

A. A municipal corporation may engage in any business or enterprise which may be engaged in by persons by virtue of a franchise from the municipal corporation, and may construct, purchase, acquire, own and maintain within or without its corporate limits any such business or enterprise. A municipal corporation may also purchase, acquire and own *real property for sites and rights-of-way for public utility and public park purposes, and for the location thereon of* waterworks, electric and gas plants, municipal quarantine stations, garbage reduction plants, electric lines for the transmission of electricity, pipelines for the transportation of oil, gas, water and sewage, and for plants for the manufacture of any material for public improvement purposes or public buildings.

. . . .

C. *The municipality may exercise the right of eminent domain either within or without its corporate limits for the purposes as stated in subsection A,* and may establish, lay and operate a plant, electric line or pipeline upon any land or right-of-way taken thereunder, and may manufacture material for public improvement purposes . . . and for any and all such purposes.

A.R.S. § 12–1115(A) (2003), and the City had not improperly delegated its power of eminent domain. Harnish challenges the latter three conclusions, but we need not reach these issues in this opinion.

(Emphasis added.) The City asks us to affirm the trial court's ruling that this statute allows it to exercise the power of eminent domain outside its municipal boundaries to take Harnish's land for use as a nature preserve.

¶ 6 We apply a *de novo* standard of review to the interpretation of statutes. *In re Stephanie N.*, 210 Ariz. 317, 318, ¶ 5, 110 P.3d 1280, 1281 (App.2005); *See also Simms v. Napolitano*, 205 Ariz. 500, 502, ¶ 9, 73 P.3d 631, 633 (App.2003).

### The Preserve is a Public Park

■ ¶ 7 Harnish initially contends that the Preserve is not a public park and is not encompassed by the term "public park purposes" in A.R.S. § 9–511(A). Therefore, we first address whether the Preserve qualifies as a park and whether creation of the Preserve advances "public park purposes" as used in § 9–511.

¶ 8 When interpreting a statute, we will give words their ordinary meanings, unless a specific definition is given or the context clearly indicates that a special meaning was intended. *Trustmark Ins. Co. v. Bank One, Arizona, NA*, 202 Ariz. 535, 541, ¶ 27, 48 P.3d 485, 491 (App.2002). If the legislature has not defined a word or phrase in a statute, we will consider respected dictionary definitions. *Urias v. PCS Health Sys., Inc.*, 211 Ariz. 81, 85, ¶ 22, 118 P.3d 29, 33 (App.2005). A park is typically defined as "[a]n area of land set aside for public use, as ... a large tract of rural land kept in its natural state and usually reserved for the enjoyment and recreation of visitors." The American Heritage Dictionary of the English Language (4th ed.2000); *see also* A.R.S. § 11–931 (2001) (defining a public park for county purposes as "a park, parkway, trail, recreational area or playground established, maintained or administered by a county, city or town").

¶ 9 The City's Master Plan for the Preserve states that the City intends to open the Preserve for public recreational uses including "hiking, bicycling, horseback riding, nature studies, picnicking, children's playground, sand volleyball, horseshoes, and other passive recreational activities." We conclude on this record that the Preserve constitutes a public park and creation of the Preserve would serve "public park purposes" as that phrase is used in A.R.S. § 9–511.

### Section 9–511 Does Not Grant Authority to the City for Extraterritorial Condemnation Solely for Public Park Purposes

■ ¶ 10 Harnish next argues that even if the Preserve is a park, § 9–511 does not constitute a legislative grant of authority to the City to exercise its eminent domain power outside of its municipal boundaries to establish the Preserve.

¶ 11 Our goal in interpreting statutes is to determine and apply the legislature's intent. *Jangula v. Ariz. Prop. & Cas. Ins. Guar. Fund*, 207 Ariz. 468, 470, ¶ 12, 88 P.3d 182, 184 (App.2004). We look first to the plain language of the statute as the most reliable indicator of its meaning. *Id.* (quoting *State v. Mitchell*, 204 Ariz. 216, 218, ¶ 12, 62 P.3d 616, 618 (App.2003)). "If the language is clear, the court must apply it without resorting to other methods of statutory interpretation unless application of the plain meaning would lead to impossible or absurd results." *Bilke v. State*, 206 Ariz. 462, ¶ 11, 80 P.3d 269 (2003) (internal quotation and citations omitted).

■ ¶ 12 We are also guided by the strict principles of statutory interpretation applied to exercises of eminent domain power by local governments generally and to extraterritorial condemnations in particular. The power of eminent domain is inherently vested in the State and limited only by the State's constitutional provisions. *See City of Scottsdale v. Mun. Court of Tempe*, 90 Ariz. 393, 396, 368 P.2d 637, 638–39 (1962); *see generally Bailey v. Myers*, 206 Ariz. 224, 76 P.3d 898 (App.2003) (discussing constitutional requirement of "public use"). Political subdivisions of the State, including municipalities, do not have inherent powers of eminent domain and may only exercise those powers that are statutorily delegated to them. *City of Phoenix v. Donofrio*, 99 Ariz. 130, 133, 407 P.2d 91, 93 (1965); *City of Mesa v. Smith Co. of Ariz.*, 169 Ariz. 42, 43, 816 P.2d 939, 940 (App.1991). We narrowly construe these

powers and will not expand them beyond what is expressly granted by the legislature or otherwise clearly and necessarily implied from the powers expressly granted. *See Donofrio,* 99 Ariz. at 133–34, 407 P.2d at 93; *Smith Co. of Ariz.,* 169 Ariz. at 44–45, 816 P.2d at 941–42.

¶ 13 "The [condemnor] will not be allowed to take the lands of another unless such right comes *clearly and unmistakably* within the limits of the authority granted. Whatever is not *plainly* given is to be construed as withheld." *Orsett/Columbia Ltd. P'ship. v. Superior Court ex rel. Maricopa County,* 207 Ariz. 130, 133, ¶ 9, 83 P.3d 608, 611 (App.2004) (quoting 1A Julius L. Sackman *Nichols on Eminent Domain* § 3.03[6][b] (Rev.3d ed.2003)) (emphasis added). *See also* 3 Norman J. Singer, *Sutherland Statutes and Statutory Construction* § 64:6 (6th ed. 2001) ("Grants of the power of eminent domain must be found expressly or by necessary implication in legislation, and the policy has become well established that such grants are to be strictly interpreted against the condemning party and in favor of the owners of property sought to be condemned. The rule is premised on the view that the power of condemnation is in derogation of common right because it is an interference with traditional and long established common-law or statutory property rights." (footnotes omitted)).

¶ 14 The Arizona legislature has, by several statutory enactments, delegated to the City the power to exercise eminent domain. For example, the City is authorized to "establish ... parks ... by the exercise of the right of eminent domain." A.R.S. § 9–276(A)(1) (1996). In addition, the legislature has provided the City the power to condemn "grounds for any public use of the state." A.R.S. § 12–1111(2) (2003). The City has also been granted power to preserve "open spaces" by expending or advancing public funds. A.R.S. §§ 9–464 to –464.01 (1996). In none of these statutes, however, has the legislature specifically granted the City authority to exercise these powers outside of its municipal boundaries. According to a leading treatise on eminent domain, a grant of power to condemn property outside the mu-

nicipal limits must be particularly clear and unequivocal:

> A municipal corporation is a creature of the state designed to operate as a local government over a limited area. Generally, a municipal corporation is confined to such area and is without power to acquire or hold real property beyond its territorial limits, unless the power to do so is *expressly* given by the legislature. *The right to exercise the power of eminent domain, under such circumstances, requires even more express and clear a grant* than does the power to acquire by ordinary methods.

*Nichols* at § 2.24 (emphasis added) (footnotes omitted).

¶ 15 Harnish argues that we should read the phrase "public utility and public park purposes" strictly in the conjunctive to require that any public park established pursuant to § 9–511 be placed on land acquired through condemnation for public utility purposes. Harnish contends, in other words, that the City may condemn land outside its territorial limits under § 9–511 to create a public park only when it also intends to use the land concurrently for public utility purposes. If, according to Harnish, the legislature had intended to allow extraterritorial condemnation solely for public park purposes, it would have used the disjunctive "or."

¶ 16 The City responds that "and" and "or" are not always interpreted literally. *See Hurt v. Superior Court,* 124 Ariz. 45, 50, 601 P.2d 1329, 1334 (Ariz.1979) (interpreting "children or parents" in wrongful death statute in the conjunctive rather than disjunctive). The City also contends that other usages of "and" in § 9–511 would not likely have a narrow, literal meaning.

¶ 17 The language of § 9–511 authorizes municipalities to exercise the power of eminent domain to acquire property outside its municipal boundaries for "public utility *and* public park purposes." A.R.S. § 9–511(A), (C) (emphasis added). Although the legislature's use of "and" instead of "or" provides superficial support for Harnish's position, we base our interpretation on examination of the full sentence from § 9–511(A), consideration of related statutes, and recognition that such

language must be strictly construed against the condemning authority.

¶ 18 Examination of the full sentence that includes the words "public utility and public park purposes" underscores the context and limited application of the words "and public park purposes":

> A municipal corporation may also purchase, acquire and own real property for sites and rights-of-way for public utility and public park purposes, *and for the location thereon of waterworks, electric and gas plants, municipal quarantine stations, garbage reduction plants, electric lines for the transmission of electricity, pipelines for the transportation of oil, gas, water and sewage, and for plants for the manufacture of any material for public improvement purposes or public buildings.*

A.R.S. § 9–511(A) (emphasis added). This statutory description of the contemplated facilities demonstrates an unmistakable emphasis on traditional utility functions, which supports the conclusion that the phrase "and public park purposes" allows municipalities to condemn property for public utility purposes and, if desired, to also use the property for park purposes. The single reference to "public park purposes" does not constitute a stand-alone grant of authority to condemn extraterritorial property solely for park purposes. To conclude otherwise would require us to ignore the full language of this sentence from § 9–511(A) and to apply an expansive interpretation instead of the required narrow construction.

¶ 19 Our interpretation of § 9–511 is further supported by examination of its context and by consideration of related statutes. We first note the placement of § 9–511 within its statutory context.

¶ 20 Arizona Revised Statutes § 9–511 is found within Title Nine (Cities and Towns), Chapter Five (Public Utilities), and Article Two (Municipal Ownership). The stated subject matter of Article Two is municipal ownership of public utilities. A review of the statutes that comprise Article Two, including § 9–511, confirms this focus on public utilities. *See* A.R.S. §§ 9–511 to –520. Article Two comprehensively addresses municipal ownership of public utilities but barely mentions "public park purposes." Given the subject matter of the other statutes within Article Two and the principle that legislative grants of authority to exercise eminent domain outside the municipal limits must be very clearly expressed, we cannot conclude that § 9–511 constitutes a grant of power to condemn outside the City's territorial limits solely for park purposes.[2]

¶ 21 Section 9–511 contains the only usage within Article Two of the word "park." Within the entirety of Chapter Five, there are only two other instances of the words "park" or "parks." These two other occurrences of "park" or "parks" within Chapter Five are located in Article Three, pertaining to Municipal Bonds for Financing Utilities, and relate to the authority of cities to acquire land for "recreational facilities" including "parks" by various means including condemnation "within or without [their] corporate limits." *See* §§ A.R.S. 9–521, –521.01, –522 (1996). Very significantly, however, the legislature has granted this authority to only those municipalities with populations no greater than 75,000. A.R.S. § 9–521.01(C). This grant of condemnation authority, therefore, does not extend to the City.[3]

¶ 22 By the language used in §§ 9–521, –521.01, and –522, the legislature clearly and unequivocally granted smaller municipalities the power to condemn outside their boundaries for public park purposes unconnected with any traditional utility functions. But the City, relying on § 9–511, has no similarly clear and express grant of authority. Accordingly, §§ 9–521, –521.01, and –522 support our conclusion that the legislature did not intend, by § 9–511, to delegate to the

---

**2.** Although title and section headings of statutes are not law, we may look to them for guidance. *Florez v. Sargeant*, 185 Ariz. 521, 524, 917 P.2d 250, 253 (1996); *Pleak v. Entrada Prop. Owners' Ass'n*, 205 Ariz. 471, 474, ¶ 7, 73 P.3d 602, 605 (App.2003), *affd* 207 Ariz. 418, 87 P.3d 831 (2004). The actual language of the statutes, rather than the titles or headings, is most important. In describing the context of § 9–511, our focus is primarily on the language of the related statutes.

**3.** We take judicial notice that the population of the City of Phoenix exceeds 75,000.

City the power of extraterritorial condemnation for public park purposes unless there was also an accompanying utility undertaking.[4]

¶ 23 Nor does our interpretation of § 9–511 lead to impossible or absurd results. In light of the narrow construction we must give such statutes, we conclude that the legislature by § 9–511 granted municipalities the authority to condemn land outside their boundaries for the purpose of locating utilities thereon and, if desired, to allow such land to be used concurrently for "public park purposes."

### The Phoenix City Charter Does Not Support This Condemnation

■ ¶ 24 We next address the City's additional argument that the Phoenix City Charter constitutes an independent grant of legislative authority to condemn Harnish's property. The City Charter contains the following broad language regarding condemnation power:

Sec. 2. Rights and powers generally.
[T]he City of Phoenix shall have the [following] rights and powers . . . :
(a) To acquire by purchase, *condemnation* or otherwise, and to establish, maintain, equip, own and operate . . . *parks,* playgrounds and *places of recreation* . . . .
(e) To acquire by purchase, condemnation or otherwise, *within or without the City,* such land and other property as may be necessary . . . to provide for and effectuate any [ ] public purpose. . . .

Phoenix City Charter, Chapter II, Part I, § 2 (emphasis added).

¶ 25 This court in *Smith Co. of Ariz.* specifically addressed whether a city, through its charter, could expand its power of eminent domain:

Although the City [of Mesa] has adopted a home rule charter pursuant to its authority under Arizona law, an Arizona municipality may not expand its power of eminent domain beyond that authorized by the legislature. The exercise of the power

of eminent domain is a matter of statewide concern, and any attempt to expand the power of eminent domain through municipal charter conflicts with the legislature's authority to determine the circumstances under which it chooses to delegate its power.

169 Ariz. at 46, 816 P.2d at 943. We agree. The exercise of eminent domain is a matter of statewide concern especially when a city attempts to condemn property beyond its territorial limits. And because State law prevents a city from exercising any condemnation power that is not specifically and clearly authorized by the State, the Phoenix City Charter cannot serve as an independent grant of condemnation authority outside the City's boundaries. *Id.*

¶ 26 The City cites *Allison v. City of Phoenix,* 44 Ariz. 66, 33 P.2d 927 (1934), in support of its argument that the City Charter language should be given effect to authorize this condemnation. In *Allison,* our supreme court rejected a taxpayer's challenge to the use of City funds to buy land for parks and recreation areas outside the city boundaries. *Id.* at 77–78, 33 P.2d at 931. The court upheld the City's proposed uses of the funds based in part on this same City Charter language. *Id. Allison* is significantly distinguishable, however, because the proposed uses did not include taking people's property against their will by eminent domain. Also, a city's power to purchase property beyond its boundaries is not subject to the same limitations as its condemnation power. *See supra* ¶¶ 12–14.

¶ 27 We have also considered whether the City Charter language should be given effect in the absence of a State statute affirmatively prohibiting a city's extraterritorial condemnation for public park purposes. Article 13, Section 2, of the Arizona Constitution requires that a city charter be "consistent with, and subject to, the Constitution and the laws of the State." It is solidly established in Arizona that the power of eminent domain is inherently vested in the State, *City of Scottsdale,* 90 Ariz. at 396, 368 P.2d at 638, and

---

4. We do not address whether the State *could* delegate this authority to the City. We hold sim-

ply that the State has not done so by § 9–511.

cities may only exercise those powers of eminent domain that are expressly granted to them by the legislature or necessarily implied from expressly granted powers, *Donofrio,* 99 Ariz. at 133, 407 P.2d at 92–93, and whatever power is not plainly given has been withheld. *Orsett/Columbia Ltd. P'ship.,* 207 Ariz. at 133, ¶ 9, 83 P.3d at 611 (citation omitted).

¶ 28 For the reasons explained in this opinion, allowing the City to condemn property extraterritorially for public park purposes is contrary to State law. To the extent the City Charter language is construed as attempting to authorize such condemnation, it "conflicts with the legislature's authority to determine the circumstances under which it chooses to delegate its power." *Smith Co. of Ariz.,* 169 Ariz. at 46, 816 P.2d at 943. Because the legislature has not granted to the City the power of extraterritorial condemnation for public park purposes, the City cannot rely on its charter to obtain the authority it seeks. *Id.*

 ¶ 29 Finally, the City also cites A.R.S. § 9–284 (1996) in support of its argument that the City Charter language applies here. Section 9–284(A) provides that if newly adopted charter provisions conflict with applicable State law, the charter provisions shall prevail. Section 9–284(B), however, mandates that the charter "shall be consistent with and subject to the state constitution, and not in conflict with ... general laws of the state not relating to cities." And, as already noted, Article 13, Section 2, of the Arizona Constitution requires that city charters be consistent with and subject to the Constitution and laws of the State. Section 9–284(A) must therefore be considered together with § 9–284(B), the Constitution, and the principles set forth above regarding the state legislature's exclusive power to determine when and to what extent it will delegate authority to a city to condemn private property. We conclude that § 9–284(A) is not applicable here because of the absence of a clear legislative grant of authority to the City to condemn extraterritorial property solely for park purposes. *See Smith Co. of Ariz.,* 169 Ariz. at 44, 816 P.2d at 941 ("We interpret the statutes narrowly because the power

of eminent domain belongs to the state, and it is for the legislature to decide when that power should be delegated to another body.").

## CONCLUSION

¶ 30 Because the City lacks legislative authority to condemn Harnish's property solely for use in the Preserve, we reverse the judgment of the trial court and remand for entry of judgment in favor of Harnish. In accordance with A.R.S. § 12–1129(B)(1) (Supp. 2006), Harnish may seek from the trial court an award of reasonable fees and costs incurred because of the trial court proceedings. We also grant Harnish's request for an award of reasonable attorneys' fees and taxable costs on appeal, contingent upon her compliance with Arizona Rule of Civil Appellate Procedure 21.

CONCURRING: DONN KESSLER, Presiding Judge and PATRICIA A. OROZCO, Judge.

