363 P.3d 127

CATALINA FOOTHILLS UNIFIED SCHOOL DISTRICT NO. 16, of Pima County, a political subdivision of the State of Arizona, Plaintiff/Appellee/Cross–Appellant,

v.

LA PALOMA PROPERTY OWNERS ASSOCIATION, INC., an Arizona non-profit corporation, Defendant/Appellant/Cross–Appellee.

No. 1 CA–CV 14–0838.

Court of Appeals of Arizona, Division 1.

Nov. 24, 2015.

---

See also 229 Ariz. 525, 278 P.3d 303.

512

DeConcini McDonald Yetwin & Lacy, PC By Lisa Anne Smith, Tucson, Co–Counsel for Plaintiff/Appellee/Cross–Appellant.

The Law Offices of Diane M. Miller, PLLC By Diane M. Miller, Phoenix, Co–Counsel for Plaintiff/Appellee/Cross–Appellant.

Stubbs & Schubart, PC By G. Lawrence Schubart, Tucson, Counsel for Defendant/Appellant/Cross–Appellee.

Presiding Judge DIANE M. JOHNSEN delivered the opinion of the Court, in which Judge KENT E. CATTANI and Judge JOHN C. GEMMILL joined.

## OPINION

JOHNSEN, Judge:

¶1 We hold in this case that a school district may exercise the power of eminent domain to acquire a private road by which vehicles may enter a school campus. Accordingly, we affirm the superior court's judgment of condemnation in all respects, except its calculation of prejudgment interest on the award of just compensation.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Catalina Foothills Unified School District No. 16 owns a school campus adjacent to La Paloma subdivision in Pima County. The property lies northeast of the intersection of Skyline Drive and Sunrise Drive. Campo Abierto, a private road that runs north from Sunrise Drive into the subdivision, borders the eastern side of the campus.

¶3 La Paloma Property Owners Association, Inc. ("La Paloma") owned Campo Abierto, along with all other private roads and common areas within the subdivision. The District acquired the school site from La Paloma in a stipulated eminent domain judgment in 1994 in which the District agreed that the only access from Campo Abierto to the campus would be for subdivision residents approaching on foot. Nevertheless, after building an early childhood learning center on the property, in 2007 the District decided for reasons of student safety to condemn Campo Abierto to allow vehicular access into the school. The District's complaint sought condemnation of the road in fee simple "subject to a perpetual easement" allowing La Paloma and subdivision property owners to continue to use the road to enter and leave the subdivision.

¶4 At the hearing for immediate possession, the District presented evidence that Campo Abierto provided the safest vehicular access to the school site because there was a traffic signal at the intersection of Sunrise and Campo Abierto but not at any other location along Sunrise or Skyline that afford-ed access to the campus. Accordingly, the superior court found that the "safety of children, parents, staff, and visitors will be enhanced by access to the [Early Childhood Learning] Center via Campo Abierto," and granted the District immediate possession of the road.

¶5 As the litigation continued, La Paloma disclosed an expert appraisal that valued the relevant portion of Campo Abierto at $172,397.70 and estimated severance damages of more than $1 million. The severance damages opinion rested on the premise that because the District lacked the power to grant La Paloma an easement to use Campo Abierto, La Paloma would have to construct an entirely new replacement road into the subdivision. The District moved *in limine* to preclude the appraisal, arguing it was based on an incorrect legal premise. Over La Paloma's objection, the superior court granted the motion.

¶6 In August 2011, the superior court entered a partial judgment that effectively limited the ensuing trial to the issue of just compensation. The jury ultimately awarded La Paloma $346,416, representing $290,000 as the fair market value of the condemned property and cost-to-cure severance damages of $56,416.

¶7 La Paloma timely appealed and the District cross-appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(A)(1) (2015).[1]

## DISCUSSION

### A. Condemnation of Campo Abierto.

¶8 La Paloma first argues the superior court erred by ruling the District had the power to condemn Campo Abierto under A.R.S. § 12–1111(3) (2015). It further contends that the taking is not in fee simple as required by A.R.S. § 12–1113(1) (2015). We review issues of statutory interpretation *de novo*. *See City of Phoenix v. Harnish*, 214 Ariz. 158, 161, ¶ 6, 150 P.3d 245 (App.2006).

---

1. Absent material revision after the date of the events at issue, we cite a statute's current ver- sion.

## 1. Power of eminent domain.

■ ¶ 9 Political subdivisions, including school districts, "do not have inherent powers of eminent domain and may only exercise those powers that are statutorily delegated to them." *Id.*, ¶ 12; *see City of Phoenix v. Donofrio*, 99 Ariz. 130, 133, 407 P.2d 91 (1965) ("[A] court will not inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions.").

¶ 10 Under A.R.S. § 12–1112 (2015), with an exception not relevant here, before private property may be acquired by condemnation, "it shall appear that … [t]he use to which the property is to be applied is a use authorized by law [and] … [t]he taking is necessary to such use." In A.R.S. § 12–1111, the legislature specified the uses for which school districts and other public entities are authorized to exercise the power of eminent domain. As relevant here, the statute provides:

> Subject to the provisions of this title, the right of eminent domain may be exercised by the state, a county, city, town, village, or political subdivision, or by a person, for the following uses:
>
> \*       \*       \*
>
> 3. Buildings and grounds for the use of a county, city, town or school district.
>
> \*       \*       \*
>
> 6. Roads, streets and alleys, and all other public uses for the benefit of a county, city, town or village, or the inhabitants thereof, which is authorized by the legislature.

A.R.S. § 12–1111.

¶ 11 La Paloma argues § 12–1111(3) allows a school district to exercise the power of eminent domain only to condemn private property for use as "buildings and grounds," and contends the statute does not authorize a district to condemn a road because a road cannot be considered "grounds" of a school.

■ ¶ 12 Statutory delegation of the power of eminent domain may be express or by necessary implication. *See Donofrio*, 99 Ariz. at 133, 407 P.2d 91 ("It is a basic principle of law that a municipality can only exercise the right of eminent domain when it is conferred upon it by the legislature ex-

pressly or by necessary implication."); *Harnish*, 214 Ariz. at 161–62, ¶ 12, 150 P.3d 245; IA Nichols on Eminent Domain § 3.03[3][d] ("The right to exercise the power of eminent domain must be conferred either in express terms or by necessary implication. As it was stated in one case: 'There can be no implication unless it arises from a necessity so absolute that, without it, the grant itself will be defeated.' "); 3 Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes and Statutory Construction § 64.6 (7th ed.2008) (same).

■ ¶ 13 The "necessary implication" standard for statutory eminent domain authority is met here: A school district's power to condemn property for use as buildings or grounds necessarily must include the power to condemn property to create access to school buildings and grounds. *See, e.g., Univ. of S. Cal. v. Robbins*, 1 Cal.App.2d 523, 37 P.2d 163, 167 (1934) (university condemned land surrounding its library to provide pathways to the library; "The same reasoning which allows the taking of sufficient land to permit the erection of a building of suitable dimensions would justify taking such further land as would fully and effectually carry out the purposes for which the building was erected.").

¶ 14 La Paloma's argument to the contrary largely relies on *Donofrio* and *City of Mesa v. Smith Co. of Arizona, Inc.*, 169 Ariz. 42, 816 P.2d 939 (App.1991), cases that are distinguishable. In *Donofrio*, our supreme court held § 12–1111(3) did not allow Phoenix to condemn property for use as a parking lot for city employees and others doing business with the city. *Donofrio*, 99 Ariz. at 133–34, 407 P.2d 91. Significantly, the court's construction of § 12–1111(3) in that case was guided by its recognition that another statute, (substantially amended later), restricted the right of a city the size of Phoenix to use eminent domain to acquire property for parking. 99 Ariz. at 134–35, 407 P.2d 91. There is no similar statute that might compel us to construe § 12–1111(3) to bar a school district from using eminent domain to acquire property to be used for access to school buildings and grounds. Moreover, there is a significant difference in

kind between a parking lot acquired for the convenience of city employees and visitors and an access way allowing teachers, students and parents to enter a school safely. The former is a convenience; the latter, a necessity.

¶ 15 The *Smith* case is no more helpful to La Paloma. There, this court held § 12–1111(3) did not empower a city to condemn property for use as a cemetery. *Smith*, 169 Ariz. at 44, 816 P.2d 939. The city argued that because other statutes allow Arizona cities to own and operate cemeteries, § 12–1111(3) must be construed to allow them to use the power of eminent domain to acquire property for cemeteries. *Id.* This court rejected the city's argument as ignoring the statutory limits on the delegation of condemnation power. *Id.* Unlike here, there was no reasonable argument that § 12–1111(3) itself necessarily implied the power to condemn for the cemetery.

¶ 16 La Paloma argues the taking is not within the statutory grant of power to condemn for use as "buildings and grounds" because Campo Abierto was a road before the condemnation and the District will use it as a road after the condemnation. Under § 12–1111(3), however, the scope of a school district's power to condemn depends on the use the district will make of the property, not the use to which the private property owner made of it prior to condemnation. More fundamentally, La Paloma's broad contention that the District lacks the power to use property acquired by eminent domain to allow vehicular traffic into or upon school grounds is unpersuasive. La Paloma does not argue that § 12–1111(3) would prevent a school district that has acquired a large site by eminent domain from using part of the acquired property to create a road from one school building to another or to create a driveway leading from a public thoroughfare onto the school campus. Indeed, La Paloma concedes that the District had the power to use acreage acquired in the 1994 eminent domain proceeding to create a road leading south to

the school from Skyline and another road leading north to the school from Sunrise.

¶ 17 La Paloma argues, however, that the text of § 12–1111 as a whole demonstrates the legislature has not granted school districts the power to condemn property for use as roads. It points out that § 12–1111(6) specifically grants to a "county, city, town or village" the power to condemn property for "roads, streets and alleys." To be sure, because school districts are not included in the list of public entities to which subsection 6 applies, that provision would not allow the District to condemn private land for construction of a street unconnected with any district property. But the power to condemn property for use as an entry way to a school site is implied within subsection 3, independent of subsection 6.

¶ 18 Beyond arguing that school districts in general lack the power to condemn private property for use as access ways, La Paloma further contends the taking was improper because there are other adequate means of entry to the District's campus. *See* A.R.S. § 12–1112 (use must be authorized and the "taking [must be] necessary to such use"). But the District's governing board determined that vehicular access via Campo Abierto was necessary for safety reasons, and a "determination of necessity should not be disturbed on judicial review in the absence of fraud or arbitrary and capricious conduct." *See City of Phoenix v. McCullough*, 24 Ariz.App. 109, 114, 536 P.2d 230 (1975).[2] Under that standard, La Paloma offers no persuasive argument for upsetting the superior court's order accepting the District's determination.

### 2. Taking in fee simple.

¶ 19 La Paloma next argues the condemnation is improper because the District did not take title to the property in fee simple. Citing *Orsett/Columbia Limited Partnership v. Superior Court*, 207 Ariz. 130,

---

**2.** *McCullough* first held that acquiring property for off-street parking was a "necessary adjunct" to a city's power, under A.R.S. § 2–306, to acquire property for an airport by eminent domain. 24 Ariz.App. at 111–12, 536 P.2d 230. The court

then turned to whether the particular property to be taken satisfied the requirement of A.R.S. § 12–1112(2) that it be "necessary" to a permitted use. 24 Ariz.App. at 114, 536 P.2d 230.

**516**

83 P.3d 608 (App.2004), La Paloma argues A.R.S. § 12–1113(1) does not allow a public entity to condemn anything less than a fee simple interest in property in connection with use as buildings and grounds. In *Orsett*, this court vacated an order allowing a county to take a leasehold interest in a strip mall by way of eminent domain. *Orsett*, 207 Ariz. at 135, ¶ 19, 83 P.3d 608. La Paloma argues that because the District ultimately granted La Paloma a perpetual nonexclusive easement over Campo Abierto (thereby allowing subdivision owners to use the road to drive to and from their homes), the District did not actually acquire a fee simple interest in the road. *See In re Forsstrom*, 44 Ariz. 472, 495–96, 38 P.2d 878 (1934) (condemnation in fee simple requires taking of property "in its entirety and as a perpetuity").

¶ 20 The District's complaint sought "fee title" to the property, however, and the District's conveyance back of the easement does not change the nature of the interest that the District acquired by condemnation.[3]

## B. Just Compensation and Severance Damages.

■■■ ¶ 21 Article 2, Section 17, of the Arizona Constitution states, "No private property shall be taken ... for public or private use without just compensation having first been made...." As applied, this provision requires the District to pay the fair market value of the condemned property, plus severance damages. *See* A.R.S. § 12–1122(A)(1)–(2) (2015); *Pima County v. De-Concini*, 79 Ariz. 154, 157–58, 285 P.2d 609 (1955). Severance damages compensate an owner whose property has been taken for any reduction in the fair market value of remaining property not taken. *DeConcini*, 79 Ariz. at 157–58, 285 P.2d 609. Severance damages may be reduced or eliminated by curing the condition causing the damages at a cost less than the amount of damages avoided by the cure. *See id.* Consistent with that principle, and without objection from La Paloma, the court instructed the jury that landowners subject to eminent do-

main have "a duty to take all reasonable steps available to minimize their loss."

¶ 22 The District and La Paloma each offered expert testimony about the value of the portion of Campo Abierto taken in the condemnation. The District's expert opined the fair market value of the taken property was $290,000; La Paloma's expert said it was $165,665. The jury accepted the higher value. Both sides agreed that as a result of the taking, La Paloma would have to pay $56,416 to change the landscaping along Campo Abierto and reconstruct a new monument sign; the jury awarded that amount as "cost to cure." By its verdict, the jury impliedly accepted the District's argument that its conveyance of the easement back to La Paloma effectively "cured" any other severance damages because the easement ensured La Paloma and other property owners continued use of the road.

¶ 23 On appeal, La Paloma argues it was entitled to additional severance damages. Citing *Corrigan v. City of Scottsdale*, 149 Ariz. 553, 720 P.2d 528 (App.1985), La Paloma argues the District's conveyance of the easement back to La Paloma was an improper substitute for just compensation. It contends the Arizona Constitution requires the public entity to pay monetary compensation to the owner of property damaged by a taking. At issue in *Corrigan* was a city ordinance that barred certain hillside development but granted affected property owners additional development rights in nearby land. *Id.* at 557, 720 P.2d 528. This court held the ordinance constituted a taking of the affected land and that the development rights the city offered on the other land were not a proper substitute for just compensation. *Id.* at 565, 720 P.2d 528. *Corrigan* did not address severance damages or cost to cure; it considered the permissible form of compensation for property taken, not, as here, a reasonable cure for damage allegedly caused to property remaining after a taking.

■■■ ¶ 24 La Paloma argues that by excluding its original expert report, the superior court "effectively ruled that [La Paloma] was obligated to accept an easement to 'miti-

---

3. For this reason, we need not address the District's argument in its cross-appeal that the supe-

rior court erred by rejecting its proposed form of judgment.

gate' and reduce severance damages." Not so. The superior court excluded La Paloma's first expert opinion because it was based on an incorrect legal premise—that the District lacked the power to convey an easement. *See* Ariz. R. Evid. 702; *Webb v. Omni Block, Inc.*, 216 Ariz. 349, 352, ¶ 6, 166 P.3d 140 (App.2007) (admissibility of expert testimony is within sound discretion of the superior court). Although the court also found the easement was a "cure [of] the severance damages caused by the taking," that finding did not, as La Paloma contends, preclude La Paloma from offering other evidence of severance damages or the cost of other reasonable steps to cure severance damages caused by the taking. To the contrary, the court specifically allowed La Paloma's first expert to revise his report, but La Paloma chose to offer another expert's report that did not include the cost of constructing a new access road into the subdivision.[4] La Paloma was not deprived of the opportunity to present its claim for severance damages to the jury.

## C. Voter Approval.

¶ 25 La Paloma next argues the District failed to obtain required voter approval for the condemnation. *See* A.R.S. § 15–341(9) (2015) (school district may "[p]urchase school sites when authorized by a vote of the district at an election...."). But the District received such approval in a 2004 bond election in which voters approved a proposal to authorize the District to acquire property and expend funds "for a new preschool facility."

¶ 26 La Paloma argues the bond approval should be construed to have author-

ized only purchase or lease transactions, not acquisitions by condemnation. But given that the District had independent statutory power to acquire property by condemnation at the time of the bond election, the bond satisfied the requirement that voters approve the acquisition.[5]

¶ 27 La Paloma contends the conveyance of the easement also required voter authorization. *See* A.R.S. § 15–342(10) (2015) (school district may "sell school sites ... if authorized by a vote of the school district electors"). As the superior court held, however, the purpose of A.R.S. § 15–342(10) "is to avoid the District's loss of use of school property except by vote of the electorate subject to certain exceptions. An easement does not prevent the District from using the school property for its intended purpose, nor does the easement cause the District to lose any rights in the use of the school property." Accordingly, the transfer of the easement to La Paloma did not violate A.R.S. § 15–342(10). *See* Op. Ariz. Att'y Gen. 179–062 ("Only if the conveyance would effectively prevent the school district from using either the subject property or other school property must there be a vote of the electorate.").[6]

## D. Indispensable Parties.

¶ 28 La Paloma next argues the District's complaint was deficient because it failed to name as defendants the owners of the many lots in the subdivision. *See* A.R.S. § 12–1117(2) (2015) (condemnation complaint shall set forth "[t]he names of all owners and claimants of the property, if known, or a statement that they are unknown, as defen-

---

4. The report La Paloma offered at trial opined that severance damages totaled $1,428,631. The expert based that opinion on interviews with five property owners and 11 real estate professionals, which the expert said allowed him to calculate the expected diminution in value of the homes in the subdivision that used Campo Abierto.

5. La Paloma cites several cases for the proposition that the power to purchase does not include the power to condemn. *See, e.g., Smith*, 169 Ariz. 42, 816 P.2d 939; *City of Tempe v. Fleming*, 168 Ariz. 454, 815 P.2d 1 (App.1991); *Harden v. Superior Court*, 44 Cal.2d 630, 284 P.2d 9 (1955). That general principle is true when the condemning entity lacks statutory eminent domain power.

Unlike the entities in those cases, as we have held, the District had the power (under A.R.S. § 12–1111(3)) to condemn Campo Abierto for use as buildings and grounds.

6. For this reason, La Paloma's reliance on *Fain Land & Cattle Co. v. Hassell*, 163 Ariz. 587, 790 P.2d 242 (1990), and *Lassen v. Arizona Highway Department*, 385 U.S. 458, 87 S.Ct. 584, 17 L.Ed.2d 515 (1967), is misplaced. By contrast to those cases, the District's conveyance of an easement did not amount to a complete disposition of the District's property; nor did it impair the District's ability to use the property.

dants"). The property to be taken, however, was owned not by the lot owners but by La Paloma, which holds title to Campo Abierto, along with other common areas, for the benefit of property owners within the subdivision. The Declaration of Covenants, Conditions and Restrictions ("CC & Rs") grants each member, owner and occupant a non-exclusive easement to use the common areas and authorizes La Paloma to represent the interests of the members and all other "interested [p]ersons" in proceedings to condemn any common area.

¶ 29 La Paloma argues the lot owners are neither "Members" nor "interested persons" under the CC & Rs. Although the CC & Rs do not define "interested persons," La Paloma's argument flies in the face of its contention that the lot owners' interests in the common areas are so significant that they must be indispensable parties to the action.

¶ 30 The CC & Rs provide that La Paloma, "in its sole discretion," may retain any damages award paid for the taking of any common area. La Paloma's real argument seems to be that even if it represented the lot owners' common interests in Campo Abierto, it could not represent their interests "as to the just compensation each is entitled to for the impact [of the taking] on their individual parcel." To the extent the lot owners suffered a cognizable injury of that nature, however, La Paloma offered evidence of those damages at trial, and the jury rejected that evidence. *See supra* footnote 5.

¶ 31 Finally, La Paloma argues the State of Arizona, which owns a parcel within the subdivision, is an indispensable party that was not named in the action. The nature of the State's interest in the common areas or in Campo Abierto is not clear from the record. To the extent that the State may claim an easement interest in Campo Abierto through some relationship with La Paloma, however, the judgment preserves that easement.

## E.  Prejudgment Interest.

¶ 32 In its cross-appeal, the District argues the superior court erred by awarding prejudgment interest at ten percent per annum since the date of possession. The District argues the interest rate should have been at the prime rate or prime-plus-one percent.

¶ 33 Interest is a component of the fair compensation due the owner of private property taken by eminent domain. A.R.S. § 12–1123(B) (2015). In A.R.S. § 44–1201 (2015), the legislature addressed interest to be paid in condemnation proceedings by several specific public entities authorized by § 12–1111 to exercise the power of eminent domain. The legislature did so by providing that the various entities will pay interest rates set forth in other statutes applicable to specific public entities with the power to condemn. *See* A.R.S. § 44–1201(C).[7]

¶ 34 School districts, however, are not among the public entities listed in subsection C. Accordingly, we turn to subsection F, which states broadly that "prejudgment interest shall be at the rate described in subsection A or B of this section." A.R.S. § 44–1201(F). Subsection A applies to interest owed "on any loan, indebtedness or other obligation" or "on any judgment based on a written agreement evidencing a loan, indebtedness or obligation." Subsection B applies to any judgment "[u]nless specifically provided for in a statute or a different rate is contracted for in writing."

¶ 35 In *Metzler v. BCI Coca–Cola Bottling Co. of Los Angeles, Inc.*, 235 Ariz. 141, 146, ¶¶ 21–23, 329 P.3d 1043 (2014), our supreme court construed "or other obligation" in § 44–1201(A) narrowly, holding that because a sanction under Arizona Rule of Civil Procedure 68 (offer of judgment) was not akin to a "loan" or "indebtedness," prejudgment interest on that sanction would be calculated pursuant to subsection B, not A. We reach the same conclusion here. Although the District owes interest from the date of the 2008 order granting it immediate possession of Campo Abierto, the interest to be awarded is calculated on the amount of the jury's determination of just compensation, which could not be known until the verdict and final judgment.

---

7. Each of the referenced statutes currently provides for interest at the prime rate. A.R.S. §§ 9–409 (2015), 11–269.04 (2015), 28–7101 (2015), 48–3628 (2015).

*See id.* at ¶ 20 ("What would otherwise be an unliquidated claim on which no prejudgment interest is owed becomes liquidated, memorialized, and enforceable only when judgment is entered, even though the time frame for which prejudgment interest is owed obviously predates the judgment.").

¶ 36 The superior court awarded prejudgment interest to La Paloma at 10 percent. Because the interest should have been calculated at prime-plus-one percent, pursuant to A.R.S. § 44–1201(B), (F), we remand the judgment to the superior court so that it may modify the amount of the interest award.

## CONCLUSION

¶ 37 For the foregoing reasons, we affirm the superior court judgment, except insofar as it specified the amount of prejudgment interest, and remand the judgment so that the superior court may modify the interest calculation.[8]

---

8. Given our conclusion, we need not address other issues the District raises in its cross-appeal.